UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No.  2:14-cr-00083-DBH |
| F. WILLIAM MESSIER  and ) | |
| DAVID EVERETT ROBINSON ) | |

**GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE DEFENDANT MESSIER'S EXPERT WITNESS TESTIMONY**

The United States of America, by and through its attorneys, Thomas E. Delahanty II, United States Attorney for the District of Maine, James W. Chapman, Jr., Assistant United States Attorney, and Karen E. Kelly, U.S. Department of Justice, hereby files this motion in limine to exclude the testimony of Dr. Carlyle Voss, M.D., regarding his diagnosis that Defendant F. William Messier suffers from a Delusional Disorder, that he has firmly fixed beliefs regarding taxes, and that he is unable to change these beliefs.  The testimony is not admissible under the Federal Rules of Evidence and the Insanity Defense Reform Act ("IDRA").  In the alternative, the government respectfully requests that the court conduct an evidentiary *Daubert* hearing to determine if this testimony meets the standards set forth in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny.

**I.    Procedural History.**

On August 27, 2014, the Court unsealed a seven count indictment returned by a federal grand jury in the District of Maine.  Count One charges that from 1999 to 2013, Defendant Messier corruptly endeavored to impede and impair the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a).  Count Two of the indictment charges Defendant Messier with conspiring with Defendant David E. Robinson in a conspiracy to

defraud the United States by impeding and impairing the IRS in the ascertainment, computation, assessment, and collection of outstanding federal income taxes owed by Messier, in violation of 18 U.S.C. § 371.  The remaining counts charge Messier with willful failure to file federal income tax returns, in violation of 26 U.S.C. § 7203.

On January 9, 2015, counsel for Defendant Messier filed a Notice of Expert, as required by Fed. R. Crim. P. 12.2(b).  In that Notice, counsel stated his intent "to introduce expert evidence relating to a mental disease or defect or other mental condition of the Defendant bearing on the issue of guilt."  In a letter dated January 12, 2015, the Government requested discovery of the name and credentials of the defendant's expert and a summary of the expert's expected testimony.  By email correspondence dated January 12, 2015, counsel provided the Government with a copy of the credentials of Dr. Carlyle B. Voss, M.D., the defendant's retained expert, and stated that Dr. Voss's report would be produced as soon as counsel received it.  On February 5, 2015, the Government renewed its request for a copy of Dr. Voss's report.

## II.     The Voss Reports.

On February 11, 2015, the government received from defense counsel a cover letter from Dr. Voss, dated February 10, 2015, and copies of two reports prepared by Dr. Voss with respect to two separate meetings he had with the defendant.  The two reports are attached as Govt. Exh. 1A (Report of Psychiatric Evaluation, dated December 11, 2014)(filed under seal) and Govt. Exh. 1B (Report of Psychiatric Evaluation – Continued, dated January 8, 2015)(filed under seal).

The December and January reports described various statements made by Defendant Messier to Dr. Voss regarding his purported beliefs about the Internal Revenue Service and federal tax law.  These statements included, *inter alia*, that: (1) only residents of the District of Columbia and special federal properties such as military bases and docks are subject to the IRS

(Govt. Exh. 1A at 3); (2) the United States dropped the gold and silver standard after 1933, and as a result, the people in the United States and their birth certificates became collateral for the country's debts (*Id.*); (3) the Form 1040 was a method used by the government to keep people under contract and take away their rights (*Id.* at 4); (4) the Internal Revenue Service "is a private for profit non federal program.  It is a debt collection agency." (*Id*. at 4); (5) taxing wages, or monies received by individuals in exchange for their labor is illegitimate (*Id*. at 5); (6) the notices of levy that the IRS sent to Messier's customers were invalid because they omitted a paragraph that should have stated that the notices of levy only applied to government employees and residents of Washington, D.C.  (Govt. Exh. 1B at 3).

Dr. Voss concluded that Messier was not motivated by monetary gain when he failed to file income tax returns.  Instead, he stated that Messier reported he was motivated by a desire to "right a wrong and convince 'Red blooded Americans' that the Federal Income Tax is illegal and that U.S. citizens are being "enslaved" by the U.S. Government.  *See id.* at 5.  Based upon the these two interviews with the defendant, Dr. Voss stated that Messier has "firmly fixed beliefs that are not amenable to change" and opined that Messier suffers from Delusional Disorder, and Obsessive Compulsive type based on criteria set forth in the *Diagnostic Statistical Manual*, 5th Edition  ("DSM V"). *See id.* at 5.

**III.   Argument.**

The Federal Rules of Evidence allow for the admission of expert opinions if the witness is qualified in the particular field of expertise and:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule codified the criteria set forth by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). *See United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002).

While the Government does not dispute Dr. Voss's credentials as a qualified medical doctor with many years of experience as a practicing psychiatrist, the Government submits that his testimony should be excluded because it will not help the jury understand the evidence or determine a fact in issue as required by Fed. R. Evid. 702(a). Specifically, the Government submits that his testimony is not relevant to the issue of the defendant's willfulness as his purported beliefs demonstrate a disagreement with the law, not a good faith misunderstanding of the law. Furthermore, the Government submits that Dr. Voss's expert opinions were the product of a flawed application of the DSM 5 definition of Delusional Disorder because he failed to consider Messier's purported beliefs within the context of the sovereign citizen and tax-defier subculture. Thus, these opinions fail to meet the requirements of Fed. R. Evid. 702(b), (c) or (d). Finally, the Government submits that any probative value of Dr. Voss's testimony is substantially outweighed by the danger that such testimony will confuse the issues and mislead the jury. Therefore, the proffered expert evidence is both inadmissible under the Federal Rules of Evidence and inconsistent with the IDRA.

    **A.**    **Disagreement with the Tax Laws is Not a Defense.**

As stated above, the indictment in this case charges the Defendant with willful failure to file individual income taxes, in violation of 26 U.S.C. § 7203. The elements of this offense include: (1) that the defendant was required to file an income tax return for the year in question, (2) the defendant failed to file an income tax return for the year in question; and (3) the

defendant acted "willfully." D. Brock Hornby, *Pattern Criminal Jury Instructions for the District Courts of the First Circuit* § 4.26.7203 (updated 1/13/15 by Chief Judge Torresen). Willfulness is the "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201 (internal quotation marks omitted). A person's incorrect but good faith belief that he is not required to file a tax return negates willfulness and is, therefore, a defense to the crime of willful failure to file. *See Cheek*, 498 U.S. at 202; *United States v. Allen*, 670 F.3d 12, 14 (1st Cir. 2012). While Section 7203 requires the Government to prove that the defendant was "willful," the other offenses charged in this indictment do not have a "willfulness" element.

"Evidence of a person's philosophy, motivation, and activities as a tax protestor is relevant and material to the question of intent." *United States v. Turano*, 802 F.2d 10, 12, (1st Cir. 1986). (internal quotations omitted). However, it is not a defense if the defendant has philosophical objections to the tax laws or believes that the tax laws are unconstitutional or invalid. *Cheek,* 498 U.S. at 206. *See also Allen*, 670 F.3d at 14; *United States v. Bonneau*, 970 F.2d 929, 931-32 (1st Cir. 1992); *United States v. Adams*, 740 F.3d 40, 45, 45 n.4 (1st Cir. 2014). *See also Hornby,* Section 4.26.7201 (comment 8).

According to Dr. Voss, Messier reported that he has studied the tax code for at least fifteen years, beginning when he "picked up a book about Federal taxes" and he also started reading the "IRS tax code book." Govt. Exh. 1A at 3. *See also* Govt. Exh. 1B at 4 ("I've studied this for 15 years. It is a matter of principle.").

These statements and other statements made to Dr. Voss by the defendant demonstrate that the defendant does not have a good faith misunderstanding of his obligations under the tax code. Instead, it shows that the defendant disagrees with the tax laws, and that he believes that the tax laws are unconstitutional and illegal. By offering Dr. Voss as an expert witness, the

defendant is attempting to turn his refusal to accept the tax law into a defense based on an alleged mental disorder. However, the defendant's purported beliefs do not negate willfulness.

> .[T]he good faith defense encompasses misunderstanding of the law, not disagreement with the law. The distinction is necessary to the functioning of the tax system. Without it, any taxpayer could evade tax obligations simply *by stubbornly refusing to admit error despite the receipt of any number of authoritative statements of the law.* At some point, such stubbornness becomes unreasonable; the line is crossed between misunderstanding and disagreement and the taxpayer can no longer successfully assert a defense of good faith.

*United States v. Schiff*, 801 F.2d 108, 112 (2d Cir. 1986) (emphasis added) *accord, Cheek*, 498 U.S. at 202 n.9 ("A defendant who knows what the law is and who disagrees with it. . . does not have a bona fide "good-faith defense to tax evasion.").

That the defendant's purported beliefs represent a mere disagreement with the law rather than a misunderstanding of the law is exemplified by the fact that this court previously rejected the defendant's legal arguments and rhetoric concerning the IRS and the Internal Revenue Code when it dismissed the law suit filed by Defendants Messier and Robinson against the IRS and others in the case of Messier et al. v. IRS et al., 2:12-cv-320-DBH. Magistrate Judge Kravchuk's stated the following in her recommended decision, dated January 7, 2013, which was affirmed by this court on February 4, 2013:

> In the final analysis plaintiffs' complaint is simply a conglomeration of well-worn taxpayer protest arguments. These arguments have been considered and uniformly rejected by courts for years. *See, e.g., United States v. Gerards*, 999 F.2d 1255, 1256 (8th Cir. 1993) (rejecting claim that citizenship of state precludes citizenship of United States); *Ryan v. Bilby*, 764 F.2d 1325, 1328 (9th Cir. 1985) (holding that Internal Revenue Code was properly enacted); *Knoblauch v. Comm'r of Internal Revenue*, 749 F.2d 200, 201 (5th Cir. 1984) (rejecting claim that the Sixteenth Amendment was not properly ratified); *see also Donaldson v. United States*, 400 U.S. 517, 534 (1971) (declaring that the IRS is an agency of the federal government and not a private company; superseded by statute on other grounds involving IRS authority to examine third party documents); *Brushaber v. Union Pac. R.R.*, 240 U.S. 1, 18-19 (1916).

Messier v. IRS, 2:12-cv-320-DBH, docket item 95. Undeterred by the court's decision, the defendant reports to Dr. Voss that he continues to choose to espouse these failed legal arguments. The defendant clearly knows from this decision in his own lawsuit, and from other evidence that will be presented at trial, that he had a duty to file tax returns. His purported beliefs are nothing more than a disagreement with law. Therefore, Dr. Voss's expected testimony should be excluded, under Fed. R. Evid. 702, 401 and 403, because his opinions are irrelevant to the issues in this case and will likely cause more confusion than assistance to the jury.

>   B.    **Dr. Voss's Diagnosis of the Defendant is Flawed**.

According to the January report of Dr. Voss, Defendant Messier is suffering from a Delusional Disorder, as defined by the DSM 5, and "has personality traits of Obsessive Compulsive Type." *See* Govt. Exh. 1B at 5. The DSM V defines delusional disorder as:

> A false belief based on incorrect inference about external reality that is firmly held despite what almost everyone else believes and despite what constitutes incontrovertible and obvious proof or evidence to the contrary. *The belief is not ordinarily accepted by other members of the person's culture or subculture (i.e., it is not an article of religious faith).*

DSM V, p. 819 (emphasis added.) Thus, according to the DSM V, to suffer from a delusion, the belief must be personal to the individual and not a product of the person's culture or subculture.

The DSM 5 specifically refers to religious faith as an example of the type of subculture beliefs that should be considered and excluded from the diagnosis unless the belief is not ordinarily accepted by other members of that subculture. For example, an improper application of the DSM V would classify subcultures of individuals with deep religious convictions who hold fast to literal interpretations of creation as set forth in the Old Testament, even when those beliefs are controverted by science, as suffering from a psychiatric disorder. The DSM avoids this over classification of individuals who claim learned and fixed beliefs by requiring

comparison of the fixed beliefs to those of individuals similarly situated in the culture of the patient.

The culture or subculture can be religious, social, or political. Shared beliefs do not constitute psychotic delusions according to the DSM. In this case, there is ample evidence that the defendant belongs to a subcultural group of individuals who share similar beliefs about the government and the tax laws. However, Dr. Voss fails to recognize in his reports that there exists a large group of individuals who, like the defendant, call themselves "sovereigns" or "sovereign citizens," that hold similar anti-government, anti-tax beliefs. Either Dr. Voss failed to research this subculture in order to consider the defendant's purported beliefs within this subculture, in which case he does not have sufficient facts or data to provide a reliable opinion as required by Fed. R. Evid. 702 (b), or he simply misapplied the criteria of the DSM V by failing to consider that the defendant's views were culturally based and not a mental disorder, as required by Fed. R. Evid. 702(c) and (d).

The statements of Messier's beliefs, as reported by Dr. Voss and summarized above, mirror those timeworn tax-defier and sovereign citizen arguments that have repeatedly been rejected by courts for decades. Messier's stated beliefs, that seem so "fixed" and "not amenable to change" to Dr. Voss, are quite standard fare in the longstanding tax-defier or tax protestor community. *See generally "The Truth About Frivolous Tax Arguments,"* http://www.irs.gov/pub/irs-utl/friv_tax.pdf.

For example, the defendant claims to believe that it is illegal to tax wages or other income earned in exchange for an individual's labor. *See* Govt. Exh. 1A at 5. However, as early as 1984, when this argument was offered by other like-minded tax protesters, courts have routinely rejected this as a "frivolous argument." *See Commissioner of Internal Revenue*, 746

F.2d 1187 (6th Cir. 1984). *Holker v. United States*, 737 F.2d 751 (8th Cir. 1984). *See also Sullivan v. United States,* 788 F.2d 813 (1st Cir.1986).

The defendant's contention that the IRS only has jurisdiction over citizens of federal territories, or that the income tax laws only apply to federal employees, has also been repeatedly rejected by the courts. *See United States v. Collins*, 920 F.2d 619, 629 (10th Cir.1990), cert. denied, 500 U.S. 920 (1991)("For seventy-five years, the Supreme Court has recognized that the sixteenth amendment authorizes a direct nonapportioned tax upon United States citizens throughout the nation, not just in federal enclaves . . .); *Dennis v. United States*, 660 F. Supp. 870, 875 (C.D.Ill.1987)(it is "well established" that the taxing power of the United States extends to all residents and citizens of the United States).

The defendant claims that the Internal Revenue Service is not a federal agency but a private debt collection agency. *See* Govt. Exh. 1A at 4. This claim has been advanced by tax protesters for more than thirty years and rejected by the courts as "frivolous." *See, e.g., Crain v. Comm'r*, 737 F.2d 1417 (5th Cir. 1984); *Snyder v. IRS,* 596 F. Supp. 240, 247 (N.D. Ind. 1984).

In short, the defendant's claimed beliefs were no different than the legal arguments and excuses raised by tax protesters or tax-defiers through the years. *See, e.g., United States v. Sloan*, 939 F.2d 499 (7th Cir. 1991). Like Messier, Sloan adopted tax protester beliefs after claiming to "study" the literature published by two like-minded tax protester organizations. The court in *Sloan* upheld the defendant's conviction, rejecting his claims that that the Internal Revenue Code did not impose a tax on income and that the defendant was not subject to the laws of the United States because he was a "freeborn, natural individual, a citizen of the State of Indiana, and a 'master'- not 'servant' - of his government. *Id*. at 500-501. *See also United States v. Cooper*, 170 F.3d 691, 691 (7th Cir. 1999) ("These [sovereign-citizen] arguments,

frivolous when first made, have been rejected in countless cases. They are no longer merely frivolous; they are frivolous squared."); *United States v. Bell*, 27 F. Supp. 2d 1191, 1198 nn.7-8 (E.D. Cal. 1998); *United States v. Mundt*, 29 F.3d 233, 237 (6th Cir. 1994) (rejecting "patently frivolous" argument that defendant was not a resident of any "federal zone" and therefore not subject to federal income tax laws); *In re Haggert*, 1992 WL 379414, at 4 (1st Cir. Dec. 22, 1992) (unpublished) ("Haggert's other points … were all well-worn tax-protestor arguments repeatedly rejected by the courts.  Haggert argued that he was not a taxpayer, and owed no income tax, because his wages were not income; that he did not live within the jurisdiction of the IRS, which is limited to Washington, D.C.; that the income tax is a volunteer tax by self-assessment, and he had not chosen to volunteer; that the income tax is an excise tax; and that application of the Internal Revenue Code to tax Haggert would be unconstitutional. These arguments are meritless, indeed silly, on their face.").

     Dr. Voss stated in his January report that "while [Messier] has information that, in his judgment, supports his beliefs, his beliefs about Federal Income Taxation *are not shared by the great majority of people in his culture and country*." Govt. Exh. 1B at 5.  However, at no time does Messier claim that his beliefs are unique, original or personal to him in any way.  Indeed, it was Messier who informed Dr. Voss that according to Messier's research "35 million people were not filing Federal tax returns." Govt. Exh. 1A at 3.  In fact, Messier most likely underestimated the number of like-minded individuals in this country.  The Southern Poverty Law Center describes Messier-like rhetoric as "the strange subculture of the sovereign citizens movement" whose adherents promote "truly bizarre, complex antigovernment" sentiment, including beliefs that "they—not judges, juries, law enforcement or elected officials—get to decide which laws to obey and which to ignore, and they don't think they should have to pay

taxes." *See Extremist Files, Sovereign Citizens Movement*, Southern Poverty Law Center (attached as Govt. Exh. 2). As of the mid -1990s, the Southern Poverty Law Center conservatively estimated that the population of tax protestors, including sovereign citizens, was approximately 500,000 individuals. *Id.* at 3. This statistic is a far cry from Dr. Voss's assumption that because Messier's beliefs are not held by a majority of the people, they were not shared by people in his culture or subculture. Quite the opposite is true; Messier's beliefs are fully shared by the population that comprises his culture—the tax-defier subculture.

Like his many colleagues who share his "beliefs," Messier reported that he researched his beliefs and has contact with others who have similar beliefs. Dr. Voss quoted Messier as stating, "I hang around the constitutionalists. We want our country back. We want the government to do what it should do, follow the Constitution." Govt. Exh. 1A at 6. One of those with whom Messier has frequent contact is his co-defendant, David E. Robinson, who was also Messier's co-plaintiff in the civil suit that Messier filed against the IRS. Robinson, who claims a range of titles—including Interim Attorney General for the Maine Free Republic, is the author of several tax protestor and anti-government publications and the publisher of a website called the "Maine Republic Email Alert," which promotes various anti-government and anti-tax theories. Robinson is also a state contact for a national tax protester group called the National Liberty Alliance. *See* www.Mainerepublicemailalert.com/author/drobin88/.

Fundamentally, Messier's purported beliefs are not new or unique to Messier. Indeed, all of Messier's tax protester rhetoric was previously advocated on the internet, in pamphlets and books, including some written by well-known tax-defiers and tax protester promoters, many of

whom have been convicted of tax crimes, including Peter Hendrickson[1], author of <u>Cracking the Code</u> (2003) and Irwin Schiff, author of <u>The Biggest Con, How the Government is Fleecing You</u> (1976) and <u>The Federal Mafia</u> (1992).[2]  Indeed, the positions that Messier espouses are very much "ordinarily accepted" within his anti-government subculture.  None of his claims are idiosyncratic to him personally.  To the contrary, this is rhetoric shared by approximately five hundred thousand Americans, including, locally, those who subscribe to The Maine Republic Email Alert.  In explaining his rhetoric to Dr. Voss, Messier stated, "we want our country back,' he was merely echoing sub-culturally valid political positions, rather than presenting symptoms of a psychiatric delusion.

      The DSM V standard for delusional disorder was not correctly applied in this case when Dr. Voss's opined that Messier's beliefs are "not shared by the great majority of people in his culture and country."  The standard is not whether the defendant's beliefs are shared by the majority of Americans, but whether members of Messier's reference group or subculture subscribe to these same beliefs.  Messier's statements to Dr. Voss indicate that these beliefs are shared by those with whom he associates.  *See* Govt. Exh. 1A at 6 ("I hang around with constitutionalists.  We want our country back.).  By Dr. Voss's method, substantial minorities of the U.S. population who profess incorrect but "firmly fixed" political beliefs suffer from a mental

---

[1] Peter Hendrickson was sentenced in 1992 to twenty-one months in prison for willful failure to file an income tax return, and conspiracy.  In 2009, he was convicted of new tax crimes and sentenced to 33 months in prison.

[2] Schiff wrote <u>The Federal Mafia</u> in prison while serving time for federal tax crimes.  Schiff claims in that book that the income tax system and the IRS were illegal.  Schiff has been promoting tax protester theories for over forty years.  *See United States v. Schiff,* 379 F.3d 621 (9th Cir. 2004).  In 2005, Schiff was convicted in the District of Nevada of multiple tax crimes and conspiracy even though Schiff's doctors submitted reports that Schiff suffered from a delusional disorder.  At age 78, he was sentenced to federal prison for 151 months.  *See United States v. Cohen et al.,* 262 Fed. Appx. 14 (9th Cir. 2007)(unpublished).

disorder. That is an incorrect application of the DSM. It is also an improper use of psychiatry to "pathologize" political claims. Defendant Messier is part of an anti-government movement that is fighting the IRS to make a political point. His conduct is criminal but not a manifestation of mental disorder. Allowing Dr. Voss to equate Mr. Messier's anti-government rhetoric to a psychiatric disorder is in direct contravention with the DSM V, which specifically excludes culture and subculture beliefs.

### C. Expert Testimony should be excluded by Rules 401 and 403 and the IDRA

If the Court finds that Dr. Voss's opinions have probative value, his proposed testimony still should be excluded under Federal Rule of Evidence 401 and 403 because any such probative value is substantially outweighed by the danger that the testimony will confuse the issues and mislead the jury. *United States v. Schneider*, 111 F.3d 197,201 (1st Cir. 1997). In essence, Dr. Voss's opinion is that Messier stubbornly refuses to accept tax laws that he disagrees with, and is willing to place himself at risk of going to prison to make a point. That is not relevant to the issue the jury will be asked to decide, i.e., whether, from 1999 through 2012, Messier believed in good faith that he did not have pay income taxes and file tax returns. Dr. Voss's opinion is not relevant to whether Messier's alleged belief was held in good faith. For example, Dr. Voss does not in any way factor in Messier's admission that he disagrees with the income tax laws, nor does Dr. Voss consider case law unanimously holding that disagreement with the law is not good faith. Moreover, Dr. Voss's recitation that Messier "spent countless hours and much money researching his beliefs about the Federal Income Tax" is not relevant to any issue the jury will be asked to decide. Accordingly, the proposed testimony should be excluded.

The IDRA limits a defendant's ability to raise a mental health issue as a defense. An exception to the general prohibition on the presentation of mental health evidence exists when a

defendant seeks to present mental health evidence to rebut the Government's evidence of specific intent.  *See United States v. Brown*, 326 F.3d 1143, 1147 (10th Cir. 2003); *United States v. Worrell*, 313 F.3d 867, 873 (4th Cir. 2002); *United States v. Pohlot*, 827 F.2d 889, 905 (3rd 1987).  Courts have reasoned that such evidence is not an affirmative defense, but rather goes to the government burden of proof.  Such mental health evidence takes the form of expert psychological or psychiatric testimony, intended to "help the trier of fact to understand the evidence or to determine a fact in issue."  Rule 702.  However, an expert must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Thus, while in some circumstances an expert might be permitted to testify as to a mental condition that may have affected the defendant's state of mind at the time of the offense conduct, the expert cannot opine as to whether the defendant acted willfully or intentionally.  Evidence of an inability to form the required specific intent constitutes an effort to justify or excuse criminal behavior, which the IDRA does not permit.  *United States v. Cameron*,  907 F.2d 1051, 1067 (11th Cir. 1990). Courts must exercise caution and scrutiny of proffered mental health evidence, as the "use of psychiatric evidence to negate mens rea may easily slide into wider usage that opens up the jury to theories of defense more akin to justification."  *Pohlot*, 827 F.2d at 905.

    Indeed, the First Circuit recognizes that such evidence is of limited relevance and such evidence could "easily mislead the jury into thinking that such a medical condition amounts to temporary insanity or ameliorates the offense." *Schneider,* at 203. (Affirming the rejection of expert testimony of two clinicians regarding alleged significant impairment of defendant's judgment by misuse of medical drugs during prosecution period.)  In reviewing such decisions pertaining to these issues—relevance, confusion, reliability, helpfulness—the First Circuit

recognizes that the district court has a comparative advantage over an appeals panel. The issues typically involve unique fact patterns and judgments of degree, and the district judge is closer to the case. *Id*. at 201.

In this case, the proffered expert testimony is intended to support the inadmissible defense that the defendant did not have the requisite mens rea because he could not conform his behavior to the law, and did not fully appreciate the consequences of his actions. This is precisely the type of testimony that is inadmissible at trial and must be excluded.

### D.  In the Alternative, the Court Should Conduct a Daubert Hearing

Finally, in the alternative to an order of exclusion without an evidentiary hearing, the government respectfully requests that the Court conduct a *Daubert* evidentiary hearing to determine whether Dr. Voss's proposed testimony is admissible under Federal Rule of Evidence 702 and *Daubert* and its progeny. "The adoption of Rule 702 in its present form codified the standard of admissibility for expert testimony that was set forth in *Daubert*." *Clark v. Edison*, 881 F.Supp.2d 192, 199 (D. Mass. July 25, 2012) (Saylor, J.) (citations omitted). "Under Rule 702, district courts considering the admissibility of scientific testimony must 'act as gatekeepers, ensuring that an expert's proffered testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Id*. at 200 (*quoting Samaan v. St. Joseph Hosp*., 670 F.3d 21, 31 (1st Cir. 2012)).

> In evaluating whether expert testimony will be helpful to the trier of fact, the Court must determine whether it is relevant, "not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue."

*Id*. at 5 (*quoting Ruiz–Troche v. Pepsi Cola of Case P.R. Bottling Co*. 161 F.3d 77, 81 (1st Cir. 1998)). "In other words, Rule 702 requires the court to 'ensure that there is an adequate fit between the expert's methods and his conclusions.'" *Id.* (*quoting Samaan*, 670 F.3d at 32).

The government does not dispute that psychology, generally speaking, and in the correct context, may be a recognized scientific discipline. However, Dr. Voss's application of that discipline to the facts in this case is unreliable, contrary to Messier's own admissions, and contrary to the DSM-V.  Among other defects, Dr. Voss's proposed testimony fails to consider prevalent beliefs among the tax-defier subculture; it appears to be based on two interviews without any extensive clinical involvement or even a review of historical mental health records; and it fails to identify any beliefs idiosyncratic to Messier, i.e., "delusions" as defined by the DSM-V.

If the Court elects not to exclude Dr. Voss based on this motion, the government respectfully requests that the Court conduct a *Daubert* hearing where the basis for Dr. Voss's opinion can be plumbed. The Court would then decide whether Dr. Voss's proposed testimony is admissible under Rule 702 (and Rule 403).   If the Court denies this motion prior to trial or takes it under advisement, the Government will then move to have the defendant examined by a qualified expert of its choice.

## IV.    Conclusion

For the reasons stated herein, the Government respectfully requests that this Court exclude the expert testimony of Dr. Voss, or, in the alternative, hold a *Daubert* hearing to determine whether his expert testimony meets the criteria set forth by the Supreme Court in *Daubert* and its progeny, as codified in Fed. R. Evid. 702.

Dated: February 18, 2015 at Portland, Maine.

        THOMAS E. DELAHANTY II
        UNITED STATES ATTORNEY

        /s/ James W. Chapman, Jr.
        Assistant United States Attorney
        U.S. Attorney's Office
        100 Middle Street Plaza, East Tower
        Portland, ME 04101
        (207) 780-3257
        James.W.Chapman@usdoj.gov

        /s/ Karen E. Kelly
        Karen E. Kelly, Assistant Chief
        U.S. Department of Justice
        Tax Division, Northern Criminal
          Enforcement Section
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 514-5150

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

**CERTIFICATE OF SERVICE**

   I hereby certify that on February 18, 2015, I electronically filed this Motion in Limine to Exclude Defendant Messier's Expert Witness Testimony with the Clerk of Court using the CM/ECF system which will send notifications of such filing(s) to the following:

| | |
|---|---|
| Michael Louis Minns | Joel Vincent |
| Ashley Blair Arnett | 44 Exchange Street |
| Michael Louis Minns, P.L.C. | Portland, Maine 04101 |
| 9119 S. Gessner, Suite One | jvincent802@gmail.com |
| Houston, TX  77074 | |
| mike@minnslaw.com | |
| Ashley@minnslaw.com | |

William D. Maselli
98 Washington Avenue
Portland, ME  04101
maselli@securenetspeed.net

               Thomas E. Delahanty II
               United States Attorney

               /s/ James W. Chapman, Jr.
               James W. Chapman, Jr.
               Assistant United States Attorney