UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | Criminal No. 14-CR-00083-DBH |
| § | |
| F. WILLIAM MESSIER and § | |
| DAVID EVERETT ROBINSON. § | |

**DEFENDANT'S MEMORANDUM OF LAW RE:
IMPROPRIETY OF JURY INSTRUCTION ON WILLFUL BLINDNESS AND
CONSTITUTIONALLY WITH REGARD TO THE TWO FELONIES**

Defendant F. William Messier, by and through his counsel of record, respectfully submits this Memorandum of Law Re: Impropriety of Jury Instruction on Willful Blindness, and respectfully requests that the Court exclude the Government's proposed willful blindness jury instruction for the reasons set forth below.

**ARGUMENT**

The Government requested that the Court include in its instructions to the jury a "willful blindness" instruction and the Court has indicated in its draft such an instruction will likely be given.

The facts of the present case combined with the evidence adduced at trial do not support a willful blindness instruction. Such an instruction would be improper and would prejudice Defendant, and therefore must not be given.

"A willful blindness instruction informs jurors that they may impose criminal liability on people who, recognizing the likelihood of wrongdoing, nonetheless consciously refuse to take basic investigatory steps." *United States v. Griffin*, 524 F.3d 71, 77 n.4 (1st Cir. 2008) (citation and quotation marks omitted). *Accord United States v. Rothrock*, 806 F.2d 318 (1st Cir. 1986). Also deemed "conscious avoidance," "deliberate

ignorance" or the "ostrich" instruction, a finding of "deliberate ignorance is reflected in a criminal defendant's actions that suggest, in effect, 'Don't tell me, I don't want to know.' The instruction's purpose 'is to inform the jury that it may consider evidence of the defendant's charade of ignorance as circumstantial proof of guilty knowledge.'" *United States v. Skilling*, 554 F.3d 529, 548 (5th Cir. 2009) (citations omitted). Messier, in contrast, has been saying "tell me I want to hear and to know the law." The fact that he is unable to hear or know harms him civilly but should not be used against him in a criminal prosecution where mens rea is critical.

  The First Circuit Court of Appeals has made clear that "[a] willful blindness instruction is appropriate only if (1) a defendant claims a lack of knowledge, (2) the facts suggest a conscious course of deliberate ignorance, and (3) the instruction, taken as a whole, cannot be misunderstood as mandating an inference of knowledge." *Griffin*, 524 F.3d at 78 (quoting *United States v. Coviello*, 225 F.3d 54, 70 (1st Cir. 2000)). *Accord United States v. Pérez-Meléndez*, 599 F.3d 31, 39 (1st Cir. 2010). *See United States v. St. Michael's Credit Union*, 880 F.2d 579, 585-86 (1st Cir. 1989) (willful blindness instruction appropriate where defendant's "main line of defense was that she had no knowledge" and evidence and inferences supported finding that if she did not know about specific transactions charged in indictment, it was because she consciously made a choice to be ignorant of them). Here, Messier does not claim a lack of knowledge rather he claims knowledge the rest of us do not have. Despite the fact that the evidence, viewed most harmfully to Messier does support an unfortunate conscious choice, the charge requires more. It also requires a deliberate claim not to know a specific fact that would be incriminating if known. There is no disagreement on the basic facts, only on

Messier's interpretation of the facts applied to the law.

As these cases demonstrate, several considerations have emerged from the case law regarding the propriety of a willful blindness instruction. The instruction is disfavored. The instruction should only be used in exceptional circumstances in which all of the elements are clearly established. If it is given the court must clearly inform the jury that the instruction applies subjectively to the defendant. And, the instruction is especially inappropriate in a case in which the jury hears evidence of non-criminal behavior that could wrongly be considered as meeting the intent requirement by a finding of conscious avoidance.

## I.     THE WILLFUL BLINDNESS INSTRUCTION IS DISFAVORED.

In *Griffin*, the First Circuit cautioned against the use of a willful blindness instruction:

> As a general matter, the use of ["willful blindness"] language could cause a jury to conclude erroneously that it need only find negligence in order to convict under a willful blindness theory. *See Cassiere*, 4 F.3d at 1023 ("Caution is necessary in giving a willful blindness instruction 'because of the possibility that the jury will be led to employ a negligence standard and convict a defendant on the impermissible ground that he should have known [an illegal act] was taking place.'") (citations omitted).

*Griffin*, 524 F.3d at 80. Similarly, the Fifth Circuit has mandated that the instruction be given only in "rare" circumstances. *Skilling*, 554 F.3d at 549.

> Rather, for the instruction to be warranted, "[t]he evidence at trial must raise two inferences: (1) the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and (2) the defendant purposely contrived to avoid learning of the illegal conduct." Thus, where there is no such evidence, a district court should not give the instruction because there is no basis for finding deliberate ignorance. In such a case, it is usually harmful, because it is likely to lead the jury to find that the defendant had the requisite knowledge when he in fact did not.

*Id*. The Fifth Circuit has "frequently warned of a risk inherent in" giving a deliberate

ignorance instruction. *Id.* at 548. "The source of this risk is the potential for confusion about the degree of 'deliberateness' required to convert ordinary, innocent ignorance into guilty knowledge." *Id. See United States v. Hilliard*, 31 F.3d 1509, 1514 (10th Cir. 1994) (stating rule "that use of a deliberate ignorance instruction 'is rarely appropriate ... because it is a rare occasion when the prosecution can present evidence that the defendant deliberately avoided knowledge'").

The present case is not one of those "rare" or "exceptional" cases in which the jury should receive a willful blindness instruction.

## II.   THERE ARE NO "FLAGS OF SUSPICION" THAT WOULD WARRANT A WILLFUL BLINDNESS INSTRUCTION HERE.

While the First Circuit has "conclu[ded] that *Cheek* does not foreclose the use of a willful blindness instruction in tax-avoidance cases in general," *United States v. Anthony*, 545 F.3d 60, 65 (1st Cir. 2008), such an instruction is only appropriate when all three elements—a claimed lack of knowledge, facts suggesting a conscious course of willful ignorance, and a proposed instruction that would not mandate an inference of knowledge—are met, *id.* at 64. Messier does not claim lack of knowledge of any specific facts. His lawyers claim mistake in his interpretation of the law itself, and his duties under the law. He disagrees with his own lawyers – to his substantial detriment.

The First Circuit has also provided practical guidance for determining whether the instruction is appropriate. "In determining whether the facts suggest the type of deliberate avoidance warranting an instruction, we must consider whether the record evidence reveals 'flags' of suspicion that, uninvestigated, suggest willful blindness." *United States v. Epstein*, 426 F.3d 431, 440 (1st Cir. 2005). "Direct evidence of willful blindness is not required; what is needed are *sufficient warning signs* that call out for

investigation or evidence of deliberate avoidance of knowledge." *United States v. Azubike*, 564 F.3d 59, 66 (1st Cir. 2009) (emphasis added). Thus, in *Azubike*, the First Circuit described how the facts lent themselves to a willful blindness instruction:

> The jury could easily have concluded that defendant went out of his way to avoid learning the contents of the briefcase, if he did not already know. When Mukasa began discussing the contents of the briefcase, referring to it in coded language, defendant asked him to stop, saying, "Don't say nothing more, don't say anything." This evidence clearly supports the inference that defendant was on notice but purposefully avoided learning the contents of the briefcase.

*Id.* at 67.

Legal opinions, such as those from his lawyer, his friends, even his enemies, are certainly admissible to show he was warned – but they are not admissible to prove he believed them but chose not to act on them. That conclusion would require "a reasonable man", objective standard, and not a subjective standard. Messier's conclusions are certainly unreasonable and irrational – and the extent of absurdity can be used to argue "he cant possibly believe this" but to carry it further on the facts in this case, violates *Cheek*.

"Flags of suspicion" are absent when the evidence points to only actual knowledge or no knowledge. *United States v. Stone*, 9 F.3d 934, 937 (11th Cir. 1993). To wit: Messier either understands the law or he does not. The First Circuit put it this way: "[W]hen the evidence presented at trial provides the jury with only a binary choice between actual knowledge and innocence, a willful blindness instruction is inappropriate." *Azubike*, 564 F.3d at 67 (citing *United States v. Lizotte*, 856 F.2d 341, 343 (1st Cir. 1988)). The *Azubike* court also cited the First Circuit case of *United States v. Brandon*, 17 F.3d 409 (1st Cir. 1994), and explained that the willful blindness instruction

is only appropriate when there is "separate and distinct" evidence to support such an instruction. The instruction might be appropriate if "separate and distinct evidence supports a defendant's deliberate avoidance of knowledge and the possibility exists that the jury does not credit the evidence of direct knowledge." *Id.* at 452 n.74. Conversely, "when the evidence presented at trial provides the jury with only a binary choice between actual knowledge and innocence, a willful blindness instruction is inappropriate. *Azubike*, 564 F.3d at 67.

Thus, the standard for the instruction's appropriate use is high: if the instruction is given the jury must be clearly instructed that it may find deliberate ignorance only if the government has proven beyond a reasonable doubt that the defendant "deliberately kept himself ignorant," *Stone*, 9 F.3d at 938, that is, only if "there is significant evidence of deliberate ignorance," *Skilling*, 554 F.3d at 549. The instruction must be avoided if there are only the inferences of actual knowledge or no knowledge at all. *Id.* Here, Defendant Messier, is not arguing facts, or hiding from them. He argues what he believes the law to mean. His thought process is further diluted by an irrational delusional belief.

As the *Hilliard* court put it in holding a conscious avoidance instruction was erroneous, although the jury was entitled to disbelieve the defendant's testimony, there was no evidence that he "purposefully contrived to avoid learning the true state of the transaction (of which he was told repeatedly) and the potential criminal conduct flowing from reporting it otherwise." 31 F.3d at 1516. The court referred to the rule that if a deliberate ignorance instruction is to be appropriate there must be evidence "showing that the defendant denies knowledge of an operative fact and defendant's actions include deliberate acts aimed at avoidance of actual knowledge." *Id. See Pérez-Meléndez*, 599

F.3d 31 (reversing conviction where circumstantial evidence was insufficient to convict because it did not adequately support inference that defendants had actual knowledge or were willfully blind); *United States v. Kaiser*, 609 F.3d 556 (2d Cir. 2010) (holding district court erred in instructing jury on conscious avoidance without either the "high probability" or the "actual belief" language because the jury could have found guilt based on mere negligence); *United States v. Beckner*, 134 F.3d 714, 720, 721 (5th Cir. 1998) (reversing fraud claim where there was a paucity of evidence of knowledge, concluding "[a] reasonable juror could not find the requisite intent on this evidence without speculating," and holding "the deliberate blindness instruction that the trial court gave to the jury only fuels speculation"); *Hilliard*, 31 F.3d at 1514 (disapproving use of deliberate ignorance instruction because facts did not support finding that defendant was aware of high probability that his understanding of the law was erroneous and that he made conscious effort to avoid actual knowledge); *Stone*, 9 F.3d at 937 (deliberate ignorance instruction is appropriate only if there is evidence that "defendant purposely contrived to avoid learning the truth"). *Cf. United States v. Dean*, 487 F.3d 840, 851 (11th Cir. 2007) ("A willfull [sic] blindness instruction is entirely appropriate where the evidence supports a finding that a defendant intentionally insulated himself from knowledge of his tax obligations."). In this case Messier has vigorously sought out information. He has just processed it poorly.

A case on point with the instant case is *United States v. Mapelli*, 971 F.2d 284 (9th Cir. 1992), in which the court of appeals reversed because the district court gave the willful blindness instruction:

> The deliberate ignorance instruction incorrectly diluted the government's duty to prove knowledge. Mrs. Mapelli's defense was that

she lacked knowledge of the scheme to omit cash income from Mapelli Meat tax returns. The district court, over Mapelli's objection, gave [a deliberate ignorance] jury instruction.…

> A deliberate ignorance instruction, sometimes called a *Jewell* instruction, is appropriate only when the defendant purposely contrives to avoid learning all the facts, as when a drug courier avoids looking in a secret compartment he sees in the trunk of a car, because he knows full well that he is likely to find drugs there. "It is not enough that the defendant was mistaken, recklessly disregarded the truth or negligently failed to inquire." The instruction enables the jury to deal with willful blindness, where a person suspects a fact, realizes its probability, but refrains from obtaining final confirmation in order to be able to deny knowledge if apprehended. The state of mind "differs from positive knowledge only so far as necessary to encompass a calculated effort to avoid the sanctions of the statute while violating its substance." The instruction is inappropriate where the facts point to actual knowledge rather than deliberate ignorance, and should otherwise be used "sparingly." It is not a routine instruction for cases in which knowledge is at issue. The instruction is inappropriate where the evidence could justify one of two conclusions, either that the defendant had knowledge, or that the defendant did not, but not a third conclusion, that the defendant deliberately shut her eyes to avoid confirming the existence of a fact she all but knew.

*Id.* at 285-86 (citations omitted). The evidence that the government argued showed deliberate ignorance actually showed knowledge, reasoned the court. For her part, Mapelli was guilty merely of withdrawing cash from the business account; it was her husband who failed to report their income. "Because the Mapellis owned the business, they were entitled to the money and there was nothing wrong with their taking money out of the company, in currency or any other form. The wrong was in failing to report the income to the government." *Id.* at 287. The *Mapelli* court then explained the distinction between evidence of *actual knowledge* and *deliberately avoiding knowledge*, a distinction important here:

> This is not to say that the evidence could not go to the jury on a theory that Mr. and Mrs. Mapelli were lying about her claimed ignorance of the critical facts, and that she knew they were skimming. A jury could

> infer from her withdrawals, deposits, and expenditures in currency, her handling of the currency at the office, and other evidence, that she knew the cash was not being reported and took it out to avoid paying taxes on it. *But that would be knowledge, not deliberate ignorance*.

*Id.* (emphasis added). In short, all of the government's evidence "was evidence that Mrs. Mapelli was knowingly skimming, not that she deliberately avoided knowing." *Id.* *Id.* at 286. The *Mapelli* court concluded that the deliberate ignorance instruction was inappropriate because the evidence did not allow for a reasonable inference of willful blindness. *Id.* And, giving the instruction was not harmless error, because, as in the typical tax evasion case, the key to guilt was proof of state of mind.

> We cannot find harmless error in the deliberate ignorance instruction. Like many tax evasion cases, the issue in this case was not what was done, but rather the state of mind with which it was done. The prosecutor read the deliberate ignorance instruction in his closing argument, using it effectively to assist the jury in evaluating the mental element. *As the evidence in this case developed, the government had to prove that Mrs. Mapelli was lying*. Since there was insufficient evidence of deliberate ignorance, the effect of the instruction, if it had an effect, could only have been to enable the jury to convict if they thought she was ignorant of the skimming but careless in not finding out. *That is not the criminal state of mind required for conviction*.

*Id.* at 287 (emphasis added).

As in *Mapelli*, to support conviction the evidence adduced by the Government in this case must prove *mens rea*, which in this case is willfulness. As in *Mapelli*, a deliberate ignorance instruction would be inappropriate here because the evidence presented at trial demonstrates either that Defendant acted willfully, or that he did not. There is no evidence whatsoever to reasonably support an inference that Messier willfully turned a blind eye.

The three elements required in the First Circuit to support giving a willful blindness instruction are not met. Defendant Messier has not made a claim of lack of

knowledge. The facts do not in any way support or even suggest that Messier engaged in an intentional course of deliberate ignorance. He either misinterpreted the law or he deliberately disobeyed it. There is no gray area. And, taken as a whole, the instruction suggested by the Government will be misunderstood as mandating an inference of knowledge on the part of Messier. When, as here, the defendant's defense to criminal charges is that he or she possessed a good faith belief based on delusion, a willful blindness instruction is simply improper.[1]

Rather, the evidence adduced at trial by both parties can compel only one of two conclusions: willfulness or not. There are no "flags of suspicion" to suggest Messier avoided knowledge of specific facts, rather than weird interpretations of the law. The facts show the opposite of conscious avoidance, i.e., constant and obsessive study of the Tax Code and every piece of literature written about it in order to gain knowledge, which fed the delusion that Messier is a person exempt from federal taxation. This is not lack of knowledge, conscious ignorance, intentional insulation from the facts, or deliberate steps to avoid knowledge. There is no evidence that Messier "intentionally insulated himself from knowledge of his tax obligations," *Dean*, 487 F.3d at 851. The evidence can only support a finding of either actual knowledge or innocence, such that the willful blindness instruction is inappropriate here.

---

[1] Cases in which the federal courts have approved the use of a willful blindness instruction when the criminal tax defendant relies on a good-faith defense are distinguishable from the present case. *See United States v. Cunan*, 152 F.3d 29, 39 (1st Cir. 1998) (facts of the case sufficiently supported inferences necessary for willful blindness instruction, such as defendants' awareness of a third party's extensive purchases under false names and that he was a fugitive from a drug trafficking charge, yet they adamantly maintain that they did not know the funds came from drug trafficking); *United States v. Camuti*, 78 F.3d 738, 744 (1st Cir. 1996) (jury could reasonably find that even if defendant had not directed the fraud, there were warning signs that would have alerted him to the fraud unless he deliberately chose to close his eyes to them).

### III. A WILLFUL BLINDNESS INSTRUCTION IS ESPECIALLY OBJECTIONABLE WHEN, AS HERE, EVIDENCE OF STIPULATED CIVIL INFRACTIONS COMBINED WITH AN INSTRUCTION ON WILLFUL BLINDNESS COULD MISLEAD THE JURY INTO FINDING GUILT BASED ON LESS THAN BEYOND A REASONABLE DOUBT.

There is another reason, specific to this case, that compels against giving a deliberate ignorance jury instruction here. When the Government's criminal case so heavily involves facts relating to civil proceedings and civil violations, which have been conceded, the use of a willful blindness instruction increases the risk that the jury could convict upon a finding of negligence. Such was the case in *Hilliard*, 31 F.3d 1509, in which the government charged the defendant with numerous counts of bank fraud that were related to certain deferred tax transactions. The *Hilliard* court reasoned:

> Accounting for deferred taxes is entirely proper. [T]he government's criminal case depends upon proof that the manner in which the deferred tax transactions were handled, by funding and transferring the deferred tax liability from the bank to the holding company, was a scheme to skim money from the bank. A significant portion of the trial, however, involved [a] civil regulatory provision … which prohibit[s] such transactions as improper loans by the bank to the holding company.
>
> Although the evidence concerning a civil violation may be used to prove knowledge or intent, it may not be used to prove criminal liability. Because a significant portion of the trial was devoted to the civil regulatory issue of deferred tax payments as loans, we conclude that the deliberate ignorance instruction made it a real possibility that the jury could have convicted Mr. Hilliard for negligence in failing to heed the FHLBB regulatory position.

*Id.*, 31 F.3d at 1515-16 (citations omitted). The *Hilliard* appellate court reversed. The defendant relied on a good-faith defense, and there was some evidence to support the defense. On the other hand, the evidence tending to support a finding of guilt was not so compelling that the court could conclude that the deliberate ignorance instruction harmless was beyond a reasonable doubt. *Id.* at 1517.

As in *Hilliard*, a deliberate ignorance jury instruction is particularly inapt and would be dangerous in this case. The Government's case includes substantial evidence of Messier's actions relating to civil assessments, liens and levies. This evidence, as the *Hilliard* court explained, might be used to show knowledge on the part of Messier—but it cannot be used to support a finding of criminal intent. Use of a willful blindness instruction here will lead to the jury finding Messier guilty of criminal wrongs based only on his behavior as it related to these civil proceedings. For this reason, giving a willful blindness instruction would be error.

## IV.   THE CONSTITUTIONALITY ISSUE

A belief that the income tax itself is unconstitutional is not a defense, *Cheek v. United States*, 498 U.S. 192, 206 (1991), and Defendant does not assert it here. However, it does not negate a good-faith belief on Messier's part that he is following the law. In fact, *Cheek* itself exemplified the case in which a defendant held some good-faith beliefs that had the effect of negating willfulness, *id.* at 203, as well as some opinions about the constitutionality of the tax laws that were not to be heard by the jury because they could not negate willfulness, *id.* at 206. The First Circuit has recognized the distinction. *See United States v. Allen*, 670 F.3d 12, 14 n.1 (1st Cir. 2012) ("*Cheek* concluded that a defendant lacks the willfulness necessary for tax evasion if he honestly believes, based on a misreading of the tax laws, that he owes no taxes.… *Cheek* distinguished, and did not allow as a defense, a belief that the tax laws are unfair or are unconstitutional." (citations omitted).)

The charge suggested by the Government in its current version seems to ignore this distinction. It is based in the Government's argument that a defendant's views about

the constitutionality of the Tax Code may not negate willfulness. But a defendant's subjective belief based solely on an interpretation of the Code may negate willfulness. Messier's complaining incorrectly that the levy was unconstitutional is not the same thing as arguing the right to tax income is unconstitutional. Messier's failure to file is based on his unconstitutional perspective and his misinterpretation of tax law. His letters complaining of the levy are separate and apart from his flawed interpretation of the tax law. He does complain that the levy without a court order, violates his 4th amendment rights. Counsel is unable to explain Messier's position on the levy – but it appears from the evidence that it is separate and apart from his readings of the internal revenue code and his reasons for not filing.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court refuse to instruct the jury about "willful blindness."

Respectfully submitted on April 1, 2015.

/s/Michael Louis Minns
**Michael Louis Minns**
Ashley Blair Arnett
MICHAEL LOUIS MINNS, P.L.C.
9119 S. Gessner, Suite One
Houston, TX  77074
Tel.: (713) 777-0772
Fax: (713) 777-0453
Email: mike@minnslaw.com
          ashley@minnslaw.com

William D. Maselli
98 Washington Avenue
Portland, ME  04101
Tel.: (207)-780-8400
Fax: (207) 879-2619
Email:  maselli@securespeed.net

Attorneys for Defendant F. William Messier

## CERTIFICATE OF SERVICE

On April 1, 2015 I, Ashley Blair Arnett, attorney for the Defendant F. William Messier, filed this motion with the United States District Court District of Maine electronic filing system. Based on my training and experience with electronic filing in the federal courts, it is my understanding that a copy of this request will be electronically served upon the parties upon its submission to the Court.

*/s/Ashley Blair Arnett*

Attorney for Defendant F. William Messier