**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | **Criminal No. 14-CR-00083-DBH** |
| | § | |
| **F. WILLIAM MESSIER and** | § | |
| **DAVID EVERETT ROBINSON.** | § | |

**DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR A NEW
TRIAL AND MEMORANDUM OF LAW IN SUPPORT**

Defendant F. William Messier, by and through his counsel of record, and pursuant to Rules 29(c) and 33 of the Federal Rules of Criminal Procedure, respectfully submits this Motion for Judgment of Acquittal or a New Trial and Memorandum of Law in Support. Defendant respectfully requests that the Court enter a judgment of acquittal pursuant to Rule 29(c), or, in the alternative and in the interests of justice, grant Defendant a new trial under Rule 33 on the conspiracy and corrupt endeavor charges.

On April 3, 2015, at approximately 9:00 p.m., at the end of a trial by jury, Messier was found not guilty of five counts of failure to file under 26 U.S.C. § 7203. The jury found Messier guilty of Count One, corruptly endeavoring to impede administration of the tax laws, 26 U.S.C. § 7212(a), and guilty of Count Two, conspiracy with David Everett Robinson to defraud by impeding the IRS, 18 U.S.C. § 371.

## ARGUMENT

The Court should enter a judgment of acquittal of the two felonies charged in Count One and Count Two because the evidence is insufficient to sustain a conviction on these two counts. Fed. R. Crim. P. 29. In the alternative, the Court should vacate the

judgment on Count One and Count Two, and grant Defendant a new trial on these two counts because the interest of justice so requires.  Fed. R. Crim. P. 33.

## I.   THE COURT'S INSTRUCTIONS ON CORRUPT ENDEAVOR WERE ERRONEOUS TO A CONSTITUTIONAL PROPORTION.

The instructions for corrupt endeavor defeated *mens rea*, and amounted to a directed verdict in a criminal case, which is a denial of the Sixth Amendment right to a jury trial.  *See Neder v. United States*, 527 U.S. 1, 12 (1999) (improper jury instruction on an element of the offense, such as intent, violates jury trial guarantee under the Sixth Amendment); *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993) (right to trial by jury in serious criminal cases is "fundamental to the American scheme of justice," and right to jury trial includes the right to have the jury, not judge, reach the requisite finding of "guilty," such that "although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence").

The instructions, required by the First Circuit, must be changed to require some intent to do something that violates the criminal law.

## II.   THE INSTRUCTIONS TO THE JURY ON THE SEVERAL CHARGES, COMBINED WITH ANSWERS TO THE JURY'S QUESTIONS, WERE SO PREJUDICIAL TO DEFENDANT AS TO REQUIRE A NEW TRIAL.

During the trial, the jury came back and asked the Court several questions, including "what are the DSM requirements for delusion?"[1]

Reading the instructions to the jury from the four corners, and after receiving the questions from the jurors, it becomes obvious that the First Circuit's required instructions were unconstitutionally unclear when read in context of all charges indicted.  The

---

[1] A transcript has not been made.   This is paraphrased from memory.

confusion on the conspiracy charge naturally created when the Government claimed that Defendant relied on his interpretation of the Constitution, regarding his failure to file, while the defense claimed Messier relied on his interpretations of the Tax Code itself—a result Justice Scalia foresaw in *Cheek*[2]—were exacerbated with the charge of conspiracy, which has a lesser standard of proof, and with corrupt endeavor that has, when used in a tax case, an extremely low standard.[3]  This combination of errors practically called for a directed verdict.  The jury was not required to understand that in order to find guilt it must find that the defendant broke the law.  Add to this, Defendant Messier's delusions, which were the main defense issue, but which the instructions practically ignored, and the net affect of the instructions negated the defense.

Reliance on constitutional principles is not a defense in a tax case under *Cheek*. Messier's reliance on his tax views were due to his personal study of the Tax Code, and the *Cheek* instructions on constitutional issues were appropriate for the failure-to-file counts.[4]  But, with regard to the levy, Messier's strange argument on Fourth Amendment grounds, totally unrelated to tax issues, was appropriate to consider—both his belief that he was following the law and the evidence that he was delusional.  The Court's refusal to offer the defense's proposed jury instruction constitutes error.  A new trial should be granted with new instructions.

---

[2] *United States v. Cheek*, 498 U.S. 192, 208 (1991) (Scalia, J. concurring) ("I find it impossible to understand how one can derive from the lonesome word 'willfully' the proposition that belief in the nonexistence of a textual prohibition excuses liability, but belief in the invalidity (*i.e.*, the legal nonexistence) of a textual prohibition does not.").

[3] The corrupt endeavor statute has previously been used when a defendant was engaged in illegal conduct to obstruct, not in legally permitted but foolish conduct.   *See* Section III, below.

[4] The Government had testimony that Messier thought he was protected by the Constitution, and therefore argued that that was why he violated the filing requirements.

The specific confusion on the constitutional instruction with regard to the tax charge led to an incorrect reading with regard to the conspiracy counts.  There is no case law that says a defendant cannot rely on his beliefs regarding his or her view of the Constitution with regard to a levy.  The fact that Messier and Robinson complain about the constitutionality of the levies was either disregarded, or even held against them, due to the instructions given.  While such instructions are appropriate in a failure-to-file case, they are not appropriate in a conspiracy or corrupt endeavor case.  The correct answers to the jury's last two questions were to say "No" and "No."  The detailed answers, while perhaps appropriate in a pure tax case,  caused confusion in this case, particularly when the defense theory of its case was disallowed.

The rule is that the when the jury requests clarification on a charge, the district court has a duty to simply to respond to the apparent source of confusion fairly, accurately, and without creating prejudice."  *United States v. Foster*, 507 F.3d 233, 244 (4th Cir. 2007).  *See United States v. Ladd*, 885 F.2d 954, 961 (1st Cir. 1989) (when jury requests reinstruction on one issue, "the court should respond forthrightly, but not gratuitously," striking "a nice balance between acceptable helpfulness on the court's part and unacceptable intrusion into the jury's province"; ordinarily, "prudence dictates that the trial court should confine its response to the approximate boundaries of the jury's inquiry").  The "trial court must take great care to insure that any supplemental instructions are accurate, clear, neutral, and non-prejudicial, answering with concrete accuracy, and within the specific limits of the question presented."  *United States v. Hudspeth*, 525 F.3d 667, 679 (8th Cir. 2008) (citations and internal quotation marks omitted).  Thus, at times the jury's request for a supplemental instruction should be met

by a simple referral back to the original instructions. *Hudspeth*, 525 F.3d at 679. If the court fails in this duty by fundamentally changing the jury instructions in response to a jury question, several problems arise. *United States v. Mondestin*, 535 F. App'x 819, 824 (11th Cir. 2013), *cert. denied*, 134 S. Ct. 1045 (2014), and *cert. denied sub nom. Aurelhomme v. United States*, 134 S. Ct. 1562 (2014). "For one, it has the potential to confuse the jurors, leaving them uncertain of which standard to apply. Furthermore, such a change in the instruction deprives the defendants of the opportunity to argue their case to the jury, especially with regard to the added theory of liability." *Id.*, 535 F. App'x at 824.

Thus, for instance, in *United States v. Ofray-Campos*, 534 F.3d 1 (1st Cir. 2008), the district court in response to a jury note provided the jury with extrinsic evidence about the defendants' absent alleged co-conspirators, which allowed the jury to draw a prejudicial inference that the defendants must be guilty. *Id.* at 23-24 (vacating two defendants' convictions and remanding for new trials because the prejudicial nature of the extrinsic information weighed against the relative strength of the government's case made it impossible to conclude beyond reasonable doubt the error did not contribute to the verdict). *See also Mondestin*, 535 F. App'x 819 (holding there was prejudice to defendants resulting from supplemental instruction that substantially changed initial jury charge); *United States v. Hastings*, 918 F.2d 369, 371-72 (2d Cir. 1990) (reversing for new trial where in supplemental instructions the district court left the jury confused on the issue of knowledge, which continuing uncertainty was borne out by a subsequent jury question, and undermined its earlier, correct instructions regarding the element of knowledge); *United States v. Nunez*, 889 F.2d 1564, 1569-70 (6th Cir. 1989) (holding

defendant was entitled to a new trial on conspiracy charge because the trial court abused its discretion in failing to instruct jury on the legal question raised by the jury question, which failure constituted prejudicial error).

The Court's final supplemental instructions to the jury, in response to its several questions during deliberations, confused the jury as was made apparent by the jury questions. The supplemental instructions so prejudiced Defendant in regard to the conspiracy and corrupt endeavor counts as to warrant a new trial.

### III. THE TWO CHARGES ON WHICH DEFENDANT WAS CONVICTED ARE MULTIPLITIOUS AND VIOLATE THE DOUBLE JEOPARDY CLAUSE.

The charges in the two felony counts overlap and therefore are unconstitutional under the Double Jeopardy Clause of the Fifth Amendment.

> The Double Jeopardy Clause states that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." "An indictment countervails this principle when it charges a defendant in more than one count with committing a single offense." An indictment that charges the same offense in two or more counts is termed a "multiplicitous" indictment.

> "Where, as here, a claim of multiplicity is premised on an indictment alleging several violations of a single statutory provision, an inquiring court must determine whether there is a sufficient factual basis to treat each count as separate." If not, then the counts are multiplicitous and violate the Double Jeopardy Clause.

*United States v. Swan*, No. 1:12-CR-00027-JAW-1, 2012 WL 7219008, at *2 (D. Me. Nov. 26, 2012), *aff'd*, No. 1:12-CR-00027-JAW-1, 2013 WL 685217 (D. Me. Feb. 25, 2013).

The Indictment violated the prohibition against multiplicitous prosecutions, which derives from the Double Jeopardy Clause. A defendant may not be punished multiple times for the same offense; and the right protected by the Double Jeopardy Clause

extends to a prohibition against multiplicitous prosecution.  *United States v. Chiaradio*, 684 F.3d 265, 272 (1st Cir. 2012).  "A prosecution is multiplicitous when the government charges a defendant twice for what is essentially a single crime; for example, when a felon has violated 18 U.S.C. § 922(g) by possessing a firearm, it would be multiplicitous to charge the felon with two counts simply because he had it yesterday and today."  *Id.* at 272.

Count One and Count Two are nearly the same allegations.  Count One charged Messier with "Corruptly endeavoring to impede administration of the tax laws" under 26 U.S.C. § 7212(a); Count Two charged Defendant with "Conspiracy to defraud by impeding the IRS," under 18 U.S.C. § 371.  (*See* Doc. 3-2.)  The two felony counts overlap.  Both counts rely on the following duplicate acts:  (1) Sending a "worthless" money order in the amount of $172,094.42 (Count One paras. a, b and c, and Count Two para. f); (2) Sending correspondence to Messier's customers urging them not to comply with the IRS Notice of Levy (Count One para. e, and Count Two para. e); (3) Sending correspondence to his customers to convince them to stop issuing Forms 1099 and not comply with the Notice of Levy (Count One para. g, and Count Two para. i); and (4) Sending a worthless money order to local law enforcement to open a criminal investigation (Count One paras. h and i, and Count 2 para. k).

The Fifth Amendment abhors two trials over the same facts.  Congressional intent on the corrupt endeavor statute shows the purpose was to stop threats against public officials trying to do their jobs, not to criminalize frivolous tax defense efforts.  The civil statutes take care of that.  Sanctions can be levied—and in fact civil sanctions were used here.

Defendant should not have been charged with the two felonies. The Government's purpose in filing the felony conspiracy and corrupt endeavor counts was to avoid the more appropriate charge of income tax evasion for the purpose of avoiding the harsher burden of willfulness as it is required in tax cases. Allowing the Government to charge a case solely to avoid its burden of proof is not appropriate. This trend is an unsettling effort to avoid the strict protections Congress and the Supreme Court have created for citizens accused of tax crimes. *Compare United States v. Hylton*, 710 F.2d 1106, 1111-12 (5th Cir. 1983) (defendant may not be convicted of violating 26 U.S.C. § 7212(a) for her filing of a factually accurate, non-fraudulent complaint against federal agents where her actions represented a legitimate and protected exercise of the constitutionally protected right to petition for the redress of grievances; "Although we do not condone the Hyltons' continued opposition to this Nation's tax laws, we likewise cannot condone the imposition of criminal sanction for Hylton's exercise of her constitutional right."), *with United States v. Kelly*, 147 F.3d 172, 175-76 (2d Cir. 1998) (affirming conviction under 26 U.S.C. § 7212(a) and holding "a defendant need not resort to force or the threat of force in order to be convicted of obstruction [but] 'any other' action which serves to obstruct or impede the due administration of the revenue laws" satisfies the statute).

This case is essentially a failure to-file-case, escalated to both bring in Defendant Robinson and raise the stakes for Messier to a felony, with nearly the same facts doubled. The simple truth is that Messier was trying to follow the law, and is not guilty of the willful failure to file—as the jury found. Messier cannot corruptly endeavor to

violate the law he was trying to follow.  Defendant respectfully requests that the Court enter a judgment of acquittal on the corrupt endeavor and conspiracy charges.

### IV.    THE EVIDENCE WAS INSUFFICIENT ON THE ISSUE OF THE DEFENDANT'S DELUSION.

There were two trained physicians who testified on the issue of delusion.  One found that Messier was operating under a delusion; the other found that there was no delusion, but there could be a delusion.  Thus, the evidence was not sufficient to find that there was no delusional belief by Messier, beyond a reasonable doubt.  *See United States v. Rosario-Diaz*, 202 F.3d 54, 62 (1st Cir. 2000) (concluding that because there was not sufficient evidence defendants had the knowledge required to support a conviction their convictions had to be reversed).

### V.    A NEW TRIAL IS WARRANTED BASED ON PROSECUTORIAL MISCONDUCT.

In closing statements, the Government made an inappropriate and prejudicial argument that the United States Government would collapse if people didn't pay their fair share of taxes, and that this particular offense had to be taken with great concern to the jurors themselves, implying that the country would fail without convicting Messier.[5]  A motion for mistrial was made by the defense and was denied.  It should have been granted.  The remark was inflammatory and geared to the personal prejudices of the jurors. That bell could not be un-rung.

It is well settled that such remarks by the government prejudice the defendant, as the First Circuit held in *Greenberg v. United States*, 280 F.2d 472 (1st Cir. 1960), when the prosecutor made similar such statements:

In his closing argument to the jury, the United States attorney stated:

---
[5] The exact verbiage will be cited when arguments have been transcribed.

> In 1943, as you know, we were engaged in one of the most crucial periods of our history, the greatest war in the history of the world. We became embroiled in it, and the whole future of this country was at stake.  And the ultimate result of that war would have determined whether our way of life was to continue or whether it was to perish from this earth.  And in pursuance and in prosecuting that war there were hundreds of thousands of lives of the flower of American youth lost on the battlefields or on the oceans or in the airways of this world.  And the taxpayers in this country, for prosecuting that war, paid and committed themselves to pay hundreds of billions of dollars.  And Mr. Greenberg, along with his family, and all of us, are the beneficiaries of the sacrifices that were made during the war years.  And Mr. Greenberg shows his gratitude by paying the magnanimous and munificent amount of money of $17.81 by way of income taxes, as his contribution.

> At this point defendant objected, and the court replied, "I suppose counsel must indulge in a certain amount of oratory."

*Id.* at 474.  The *Greenberg* court ordered a new trial.  It viewed the prosecutor's closing remarks as "inexcusable":  "We do not know what the court had in mind.  Oratory on the issues in the case is one thing … The government's tawdry charge of un-patriotism was not only unwarranted, it was inexcusable.  It called for immediate correction and rebuke even if counsel had not risen to object."  *Id.* at 474, 477.  To the same effect was the Supreme Court's conclusion in *Viereck v. United States*, 318 U.S. 236 (1943), in which the Court held that similar such remarks were "highly prejudicial" and "offensive to the dignity and good order with which all proceedings in court should be conducted."  *Id.* at 248 (holding the trial court should have stopped the prosecutor's discourse even without a defense objection[6]).  In the case at bar counsel did object, asked for a mistral which was

---

[6] The *Viereck* Court reasoned:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that

denied then asked for immediate instructions, which were delayed and not given in conviction with the inappropriate conduct.

"There is a difference between reminding jurors that the payment of taxes is essential to the conduct of government, and selecting some single matter especially provocative of emotion." *United States v. Cotter*, 425 F.2d 450, 452-53 (1st Cir. 1970). Here, the prosecutor's appealing to the jury's emotion by asserting that the country would collapse unless Messier was convicted was so unfairly provocative of emotion as to prejudice Defendant's constitutional rights. The Government attorney's statement constituted prosecutorial misconduct, and so prejudiced Defendant as to necessitate a new trial.

## VI.   THE ACTS CHARGED TO SUPPORT CORRUPT ENDEAVOR WERE LEGAL ACTS.

Every single act of Messier that was complained of in the corrupt endeavor charge was permitted by law.  It is inappropriate to allow a criminal conviction to be sustained when it is based on legal conduct, simply because the legal conduct is highly offensive and frivolous.  Acting in a highly offensive manner should not be the equivalent of a felonious corrupt endeavor. The Act was not created for the purpose of criminalizing incompetent attempted legal work.

## CONCLUSION

justice shall be done.  As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.  He may prosecute with earnestness and vigor- indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Viereck v. United States*, 318 U.S. 236, 248 (1943) (citations and internal quotation marks omitted).

For the foregoing reasons, Defendant respectfully requests that the Court enter a judgment of acquittal on Counts One and Two or, in the alternative, grant Defendant a new trial on Counts One and Two.

Respectfully submitted on April 10, 2015.

/s/Ashley Blair Arnett
**Michael Louis Minns**
Ashley Blair Arnett
MICHAEL LOUIS MINNS, P.L.C.
9119 S. Gessner, Suite One
Houston, TX  77074
Tel.: (713) 777-0772
Fax: (713) 777-0453
Email: mike@minnslaw.com
        ashley@minnslaw.com

William D. Maselli
98 Washington Avenue
Portland, ME  04101
Tel.: (207)-780-8400
Fax: (207) 879-2619
Email:  maselli@securespeed.net

Attorneys for Defendant F. William Messier

## CERTIFICATE OF SERVICE

On April 10, 2015 I, Ashley Blair Arnett, attorney for the Defendant F. William Messier, filed this motion with the United States District Court District of Maine electronic filing system.  Based on my training and experience with electronic filing in the federal courts, it is my understanding that a copy of this request will be electronically served upon the parties upon its submission to the Court.

/s/Ashley Blair Arnett

Attorney for Defendant F. William Messier

12 of 13