UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

_____

UNITED STATES OF AMERICA,          CRIMINAL ACTION

                Plaintiff          Docket No: 2:14-cr-83-DBH


        -versus-                   **E X C E R P T S**


F. WILLIAM MESSIER,

DAVID EVERETT ROBINSON,

        Defendants

_____

Transcript of Proceedings

Pursuant to notice, the above-entitled matter came on for **Trial** held before **THE HONORABLE D. BROCK HORNBY,** United States District Judge, in the United States District Court, Edward T. Gignoux Courthouse, 156 Federal Street, Portland, Maine on the 3rd day of April, 2015 at 9:24 a.m. as follows:

Appearances:

For the Government:  James W. Chapman, Jr.,Esquire
                     Karen E. Kelly, Esquire
                     Assistant United States Attorneys

For Defendant Messier:  Michael L. Minns, Esquire
                        Ashley Blair Arnett, Esquire
                        William Maselli, Esquire

For Defendant Robinson:  Joel Vincent, Esquire

Dennis R. Ford
Official Court Reporter

(Prepared from manual stenography
and computer aided transcription)

1                    (The following is an excerpt).

2                    (Open court.  Defendants present).

3               (Jury excused.  Time noted:  9:24 a.m.)

4          THE COURT:  Be seated.  Counsel, I guess I

5     would like to know if there's anything new that you

6     have so that I can think of it accordingly.  Yes, Ms.

7     Arnett.

8          MS. ARNETT:  On Page 10 where we enter the

9     information about the stipulation --

10         THE COURT:  Yes.

11         MS. ARNETT:  -- and it says it is stipulated

12    that F. William Messier, I would ask if we can add that

13    it is stipulated by the attorneys.  I want it to be

14    clear that the attorneys made the stipulation and not

15    the defendant.  So it's on Page 10, right under the

16    third paragraph.

17         THE COURT:  I see where it is.  I'm trying to

18    think what that means by way of a stipulation.  Why is

19    that significant?  If you're not speaking on behalf of

20    your client, then it's really not a stipulation.

21         MS. ARNETT:  I understand that, which was part

22    of the issue that we agreed that there was a filing

23    threshold that was -- that there is a filing threshold,

24    but Mr. Messier wouldn't agree that he'd met the filing

25    threshold, which is the issue that -- part of the issue

1    why we wouldn't sign the stipulation with the

2    Government.

3              MR. MINNS:  May I add something?

4              THE COURT:  Well, the question is whether --

5    the only thing is the stipulation says it's stipulated

6    that Mr. Messier exceeded the threshold amount in each

7    of the tax years.  Either it's a stipulation or it's

8    not.

9              MR. MINNS:  May I add something please, Your

10   Honor?

11             THE COURT:  Yes.

12             MR. MINNS:  This is a very unusual situation.

13   Lawyers do have, unless their clients stop them, legal

14   right and a duty to make stipulations when they find it

15   is reasonable and in the best interests of their

16   client.  The client has not objected to it, the client

17   has not agreed to.

18        We have difficulties, and I think the evidence is

19   pretty substantial, that whether the jury agrees that

20   Mr. Messier is delusional or not, he has -- I don't

21   think anybody would doubt he does not have a complete

22   understanding of this legal process.  So he has waived

23   some of his rights through his attorney willingly and

24   knowingly, but he himself has problems with much that

25   we do.

1          The Court may have noticed we moved him because I

2     can't work when I'm getting all of the suggestions and

3     orders and cards constantly telling me what the law is

4     and what to do and everything.

5          So it's -- we have the duty to Mr. Messier.

6     Sometimes the duty is offensive to him and I apologize

7     to him for doing that, but that is a duty.  We also

8     have the right as lawyers to stipulate to evidence and

9     there are legal decisions that, when someone hires a

10    lawyer, the lawyer gets to make those legal decisions

11    unless the client refuses.

12         One of the things a lawyer can't force a client to

13    do is it take the stand.  There's things that they can

14    or can't do.  We cannot delegate the authority to

15    manage Mr. Messier's case to Mr. Messier.  He would

16    mess this case up.

17         So the 6th Amendment allows people to have lawyers

18    to speak for them and make certain decisions and we

19    have made decisions and we have argued over them, but

20    we make the decisions.  You can agree with our

21    decisions or fire us.  So he is not ordering us not to

22    stipulate, but he says he doesn't require it and he

23    doesn't recognize it, but we are legally recognizing

24    it.

25              THE COURT:  What's the Government's position?

1          MR. CHAPMAN:  Your Honor, it sounds like Mr.

2   Minns at this moment in the trial is injecting a

3   competency issue and I think the Court should make some

4   findings that, based on Mr. Messier's appearance on the

5   stand for over four hours, that he was competent.

6          THE COURT:  Well, let's stick with the issue.

7   What Ms. Arnett has requested, and I guess Mr. Minns is

8   elaborating upon, is they want me not to say that it's

9   stipulated, but rather the lawyers have stipulated.

10  Are you satisfied with that language?

11         MR. CHAPMAN:  I'm not objecting to it, but if

12  that's not acceptable to the Court, then we would need

13  the additional instruction from section 61 in the

14  definition of gross income.

15         THE COURT:  Well, I'm -- depending upon what

16  Mr. Messier says in a moment, I'm going to be prepared

17  to accept it because what I say at Page 4 on

18  stipulations is that evidence is any facts to which the

19  lawyers have agreed or stipulated, and that a

20  stipulation means that the Government and the defendant

21  accept the truth of a particular proposition or fact,

22  so I think the language is adequate.

23       Mr. Vincent?

24         MR. VINCENT:  Judge, because I'm a party to

25  this as well, I'd like an opportunity to comment on

1      this paragraph.

2              THE COURT:  All right.

3              MR. VINCENT:  The concern I had about the

4      stipulation as it was proffered to us was that in

5      talking about Mr. Messier's -- the funds that he had

6      received, it was couched in terms of income and there

7      was, and I believe there always has been, a dispute

8      from Mr. Messier as part of this trial that the

9      proceeds that he received were not, quote-unquote,

10     income for the purposes of taxes.

11        My concern is my understanding of the stipulation

12     was that we were agreeing to what the threshold amounts

13     were and that Mr. Messier had received monies that

14     exceeded that amount --

15             THE COURT:   Well --

16             MR. VINCENT:  -- not that they were income.

17             THE COURT:  -- counsel, why don't I give

18     Government's instruction number 10.  Is there an

19     objection to Government's number 10?  We'll get rid of

20     the stipulation and I'll simply tell the jury that

21     that's what the law is.

22             MR. MINNS:  Well, we'd like the stipulation,

23     Your Honor.

24             THE COURT:  Well, it's being objected to by

25     counsel now for Mr. Robinson.

```
 1              MR. VINCENT:  I'm not objecting to it, Judge.
 2   I'm just saying that I think the issue is it appears to
 3   concede that he had gross income.
 4              THE COURT:  Either there's a stipulation or
 5   there's not.  Tell me what the language of the
 6   stipulation is and if there's not agreed language, then
 7   I will instruct.  So talk among yourselves for a couple
 8   of minutes and tell me if -- all three parties have to
 9   agree or there is no stipulation.
10              (Discussion off the record between counsel)
11              MR. CHAPMAN:  We agree on instruction 10, Your
12   Honor.
13              THE COURT:  All right.
14              MS. ARNETT:  And so the portion on the fourth
15   page will be eliminated as well?
16              THE COURT:  There will be no reference to
17   stipulation in the instructions at all.  I'll take out
18   the definition of the stipulation.  I'll take out the
19   reference to the stipulation and instead we will use
20   Government's 10.
21              MS. ARNETT:  Thank you.
22              THE COURT:  Any other new things that I should
23   be thinking about?
24              MS. ARNETT:  Not beside the writing we
25   objected to.
```

1          THE COURT:  Mr. Vincent, any other new things?

2          MR. VINCENT:  No, Your Honor.

3          THE COURT:  Mr. Chapman or Ms. Kelly?

4          MR. CHAPMAN:  No, Your Honor.

5          THE COURT:  No?  All right, let's come back,

6     counsel, at five of 10:00 since the jury is coming in

7     at 10:00.  We will stand in recess.

8          (Time noted:  9:33 a.m.)

9          (Recess called).

10          (Time noted:  10:06 a.m.)

11          THE COURT:  I neglected to respond to Mr.

12     Chapman's request that I make a finding on competence.

13     I will make that finding.

14          First, I observe I do not interpret Mr. Minns' or

15     Ms. Arnett's comments to suggest any lack of

16     competence.  Instead they were describing what I take

17     to be the tensions that the case produces for them

18     because of their client's professed adherence to views

19     about the tax laws that are not consistent with what

20     the tax laws really are.

21          In any event, I did observe Mr. Messier testify on

22     direct and cross-examination.  I'm confident that he is

23     completely competent to stand trial and assist his

24     attorneys.

25          I also listened to the expert psychiatric and

1  psychological testimony.  There's no suggestion in any

2  of that testimony as to any incompetence.  Indeed, even

3  the most favorable testimony by Dr. Voss, taken most

4  favorably to Mr. Messier, suggests that a delusion, if

5  there is one, can be limited to a narrow belief

6  category and not affect other abilities to function.

7  So for all of those reasons, I do find that the

8  defendant Messier is competent.

9      Now, counsel, I will take your objections to the

10  charge.  The only difference in what you received a few

11  minutes ago is to remove all reference to stipulations

12  and to insert Government's proposed 10.

13      So let me hear, first of all, any objections from

14  the Government to the charge?

15      MR. CHAPMAN:  No, Your Honor.

16      THE COURT:  Thank you.  And is there any for

17  the defendant Messier?

18      MS. ARNETT:  Yes, Your Honor.  We object to

19  the inclusion of the willful blindness instruction as

20  it goes against the case law in U.S. v. Anthony.  The

21  second prong in U.S. v. Anthony says there has to be

22  facts in evidence that --

23      THE COURT:  I'm sorry, just a second.  The

24  second prong is what?

25      MS. ARNETT:  The facts suggest a conscious

1   course of deliberate ignorance.  Here I would say that

2   the facts suggest that Mr. Messier sought out

3   information, that he didn't intentionally cover his

4   eyes and blind himself to the fact or to any other

5   course or interpretation of the law, that he did

6   nothing but seek out interpretations of the tax code.

7       In some of the examples in U.S. v. Anthony that

8   suggested a conscious course of deliberate ignorance

9   are that the defendant Anthony avoided materials, that

10  he used an elaborate financial scheme to avoid paying

11  his taxes, he refused to use other channels to disagree

12  with the tax law and he made a payment upon criminal

13  investigation.

14      Here, Mr. Messier still hasn't filed, he still

15  hasn't paid, he did not avoid materials, he didn't use

16  an elaborate financial scheme and he didn't refuse to

17  use other channels.  He used multiple other channels.

18  Whether or not those were used properly is a question

19  for the jury, but I would suggest that the willful

20  blindness instruction is improper, so that's the first

21  objection.

22      The second objection we have is to the use of

23  considering his attitude in regards to willfulness.

24  The case law in that is pre-Cheek and I am concerned

25  that adding in an issue of attitude lessens the

1      requirement that the jury has to reach under Cheek.

2           And the third objection is that I -- we suggest

3      that there needs to be an inclusion that goes over the

4      expert's psychiatric testimony.  Both doctors have

5      testified that there are some levels of concern in Mr.

6      Messier's mental health and I think that the jury needs

7      to be informed of how to handle the expert psychiatric

8      testimony.  That's all I have.  Thank you.

9           THE COURT:  Thank you, Ms. Arnett.  Mr.

10     Vincent for the defendant Robinson.

11          MR. VINCENT:  Judge, I'll join in the first

12     two objections and would note concerning the first

13     objections for the record, the indictment obviously

14     only talks about the intent to defraud and the second

15     prong of the statute.

16          THE COURT:  Thank you, Mr. Vincent.

17          MR. VINCENT:  That talks about committing a

18     crime.

19          THE COURT:  I'm sorry?

20          MR. VINCENT:  It talks about the first prong

21     of committing the crime.

22          THE COURT:  Thank you.

23          MR. MASELLI:  Your Honor, could I just add one

24     little additional comment concerning the expert

25     testimony?

1        THE COURT:  Get to it, yes.

2        MR. MASELLI:  Thank you.  Based on our written

3    request for instructions to tie in the testimony of Dr.

4    Voss, which we presented specifically toward the

5    various mental states required for conviction, the

6    Court has given only an instruction that the defense is

7    contending about the issue of intent.

8        In this case, there are issues of intent.  There

9    is specific intent, there is willfulness, there is

10   knowledge required of various areas in each of these

11   counts and I think that the doctor -- the jury should

12   be instructed that Dr. Voss's testimony has been

13   introduced for the purpose of the defendant's arguments

14   that he may not or he did not possess the necessary

15   mental state to be convicted of these charges.

16       THE COURT:  Thank you, Mr. Maselli.  All

17   right, let me make my rulings.

18       First of all on willful blindness, I'm satisfied

19   that the Anthony 1st Circuit decision does allow a

20   willful blindness charge when there is appropriate

21   evidence.  I understand Ms. Arnett's argument, but I

22   think it is taking the evidence in the light most

23   favorable to Mr. Messier.

24       There's also evidence here from which a jury could

25   conclude, if it chooses to, that he did not pursue

1   things that were different from the belief structure

2   that he chose to follow and, in fact, he was engaged in

3   willfully and deliberately closing his eyes to what the

4   law did require.

5       So I'm satisfied that the evidence before the jury

6   is sufficient to permit them to consider a willful

7   blindness instruction.  Of course, they may not find

8   there is any willful blindness, but there's enough for

9   me to instruct on it.

10      On the question of attitude toward the IRS, the

11  instruction that I'm giving on that, as you know, is

12  from the approval of the 1st Circuit in the Hogan case,

13  and the Government requested that, it was not in an

14  earlier draft.  I'm satisfied that the way I have

15  written the instruction, that it is a proper

16  instruction.

17      I still maintain in the instruction that the

18  question is subjective intent, not objective intent,

19  but that the jury's entitled to consider a number of

20  things in determining the truthfulness of the professed

21  adherence to a particular point of view.

22      And I also observe that while Hogan was pre-Cheek,

23  there's a 3rd Circuit decision in 2007 post-Cheek,

24  United States versus McKee, 506 F.3d 225, where the 3rd

25  Circuit quotes approvingly from the Hogan decision at

1    Page 237 describing in the parenthetical saying that in

2    Hogan, the jury was properly allowed to consider

3    animosity toward the IRS as an indication of

4    defendant's willfulness.

5         And finally on the expert testimony and the

6    psychiatrist and psychologist, I'm not giving the

7    instruction as the defendants request for a variety of

8    reasons.  One, I do have an instruction about how to

9    consider expert testimony.  Two, I'm not addressing

10   mental state partly because that's far too close to the

11   insanity defense of 18 USC section 17 and there is no

12   insanity defense here.  The issue here is whether

13   the -- each defendant possessed the necessary intent

14   for a particular count, particular crime.

15        I did allow the experts to testify, and certainly

16   I expect the lawyers are going to argue from that

17   testimony, whether a particular defendant did or did

18   not intend at the level that the particular statute

19   requires, but I don't think there's any need, and I

20   don't think it would be desirable for me to comment on

21   that testimony.  Instead, I will leave that to

22   argument.

23        As I say, the issue here is the necessary mens rea

24   intent under the statute.  We're not dealing with an

25   insanity type defense.  That would be more related to

1    the mental state.

2          So there are my rulings, counsel, and I think

3    we're waiting for the -- have the instructions been

4    delivered, Renee?

5                THE CLERK:  Yes.

6                THE COURT:  We do have the instructions and so

7    are we ready for the jury?

8                MR. CHAPMAN:  Yes, Your Honor.

9                THE COURT:  Defense ready?

10               MR. MINNS:  Yes, sir.

11               THE COURT:  Mr. Vincent, all set?

12               MR. VINCENT:  Yes, Your Honor, thank you.

13               THE COURT:  The jury may be brought in.

14               (Jury entered.  Time noted:  10:17 a.m.)

15               THE COURT:  Is it nice out there?  Well, we

16   will do with what's in here.  We will be content and

17   dry and warm, so I'm glad you got some fresh air.

18         As you heard me say, the evidence is now complete.

19   All the testimony has been heard, all the exhibits have

20   been admitted and what remains is for me to charge you

21   on the law and for the lawyers to present to you the

22   closing arguments.

23         It's my practice to have you read the charge along

24   with me and I'll ask the clerk now to distribute a copy

25   of the charge to each member of the jury.

1          (Jury charge handed to the jury panel).

2          We're going to read together, I'll read aloud, you

3    can read silently.  Don't practice your speed reading,

4    fall behind, stay right where we are.

5          These instructions will be in three parts.  First,

6    general rules that define and control your duties as

7    jurors.  Second, definitions of the elements of the

8    offenses charged in the indictment; in other words,

9    what the Government must prove to make its case, and

10   third, some rules for your deliberations in the jury

11   room and return of your verdict.  You may take these

12   instructions with you to the jury room.

13         It is your duty to find the facts from all the

14   evidence admitted in this case.  To those facts, you

15   must apply the law as I give it to you.  The

16   determination of the law is my duty as the judge.  It

17   is your duty to apply the law exactly as I give it to

18   you whether you agree with it or not.

19         You must not be influenced by personal likes or

20   dislikes, opinions, prejudices or sympathy.  That means

21   that you must decide the case solely on the evidence

22   and according to the law.  You took an oath promising

23   to do so at the beginning of the case.

24         You must follow all of my instructions and not

25   single out some and ignore others.  They are all

equally important.  You must not read into these instructions or into anything I may have said or done any suggestion as to what verdict you should return. That is a matter entirely for you to decide.

It is a cardinal principle of our system of justice that every person accused of a crime is presumed to be innocent unless and until his guilt is established beyond a reasonable doubt.  The presumption is not a mere formality; it is a matter of the most important substance.

The presumption of innocence alone is sufficient to acquit a defendant unless you are satisfied of his guilt beyond a reasonable doubt after considering all of the evidence.  Each of the defendants before you, F. William Messier and David Everett Robinson, has the benefit of that presumption throughout the trial and you are not to convict a particular defendant unless you are persuaded of his guilt beyond a reasonable doubt.

In a criminal case, the burden is at all times upon the Government to prove guilt beyond a reasonable doubt.  It is a heavy burden, but the law does not require that the Government prove guilt beyond all possible doubt.  Proof beyond a reasonable doubt is sufficient to convict.  This burden never shifts to F.

1      William Messier or David Everett Robinson.  It is

2      always the Government's burden to prove each of the

3      elements of the crimes charged against a particular

4      defendant beyond a reasonable doubt.

5          You must consider the evidence as to each

6      defendant separately.  F. William Messier and David

7      Everett Robinson each have the right to rely upon the

8      failure or inability of the Government to establish

9      beyond a reasonable doubt any essential element of an

10     offense charged against him.  Before you may convict F.

11     William Messier or David Everett Robinson, the

12     Government's evidence must satisfy you beyond a

13     reasonable doubt of that particular defendant's guilt

14     of the particular offense charged.

15         If, after fair and impartial consideration of all

16     of the evidence, you have a reasonable doubt as to F.

17     William Messier's or David Everett Robinson's guilt of

18     a particular crime, it is your duty to find that

19     defendant not guilty of that crime.  On the other hand,

20     if, after fair and impartial consideration of all of

21     the evidence, you are satisfied beyond a reasonable

22     doubt of F. William Messier's or David Everett

23     Robinson's guilt of a particular crime, you should find

24     that defendant guilty of that crime.

25         The guilt of F. William Messier and David Everett

1   Robinson respectively of the offenses charged must be

2   established upon the evidence and the reasonable

3   inferences to be drawn from that evidence.  Do not

4   concern yourselves with whether other people have or

5   have not been indicted.  You are called upon to decide

6   only whether either or both of these two defendants are

7   guilty or not guilty of the particular offenses

8   charged.

9        Likewise, do not concern yourself with what

10  sentence may confront a defendant who is convicted.

11  That is for the judge to determine considering

12  sentencing guidelines approved by Congress.

13       The evidence from which you are to decide what the

14  facts are consist of the sworn testimony of witnesses,

15  both on direct and cross-examination, regardless of who

16  called the witness, and the exhibits that have been

17  received into evidence.

18       Although you may consider only the evidence

19  presented in the case, you are not limited to the bald

20  statements made by the witnesses or contained in the

21  documents; in other words, you are not limited solely

22  to what you see and hear as the witnesses testify.  You

23  are permitted to draw from facts that you find have

24  been proven such reasonable inferences as you believe

25  are justified in the light of experience.

1    Whether the Government has sustained its burden of

2    proof does not depend upon the number of witnesses it

3    has called or upon the number of exhibits it has

4    offered, but instead upon the nature and quality of the

5    evidence presented.

6    You do not have to accept the testimony of any

7    witness if you find a witness not credible.  You must

8    decide which witnesses to believe and which facts are

9    true.  To do this, you must look at all the evidence,

10   drawing upon your common sense and personal experience.

11   You may want to take into consideration such

12   factors as the witness's conduct and demeanor while

13   testifying, their apparent fairness or any bias they

14   may have displayed, any interests you may discern that

15   they have in the outcome of the case, any prejudice

16   they may have shown, their opportunity for seeing and

17   knowing the things about which they testify, the

18   reasonableness or unreasonableness of the events that

19   they have related to you in their testimony, and any

20   other facts or circumstances disclosed by the evidence

21   that tend to corroborate or contradict their versions

22   of events.

23   You have heard testimony from witnesses described

24   as experts.  People who, by education and experience,

25   have become expert in some field may state their

1 opinions on matters in that field and may also state

2 their reasons for the opinion.  Expert opinion

3 testimony should be judged like any other testimony.

4 You may accept it or reject it and give it as much

5 weight as you think it deserves considering a witness's

6 education and experience, the reasons given for the

7 opinion, and all the other evidence in the case.

8 In this trial, these witnesses were at times asked

9 hypothetical questions and they gave answers to such

10 questions.  In answering a hypothetical question, an

11 expert witness must accept as true every asserted fact

12 stated therein, but this does not mean that you must.

13 If you find that assumed facts are not proven, you

14 should disregard the answer based on the hypothetical

15 question.

16 There are two kinds of evidence; direct and

17 circumstances.  Direct evidence is direct proof of a

18 fact, such as testimony of an eyewitness.

19 Circumstantial evidence is indirect evidence, that is,

20 proof of a fact or chain of facts from which you can

21 draw the inference by reason and common sense that

22 another fact exists, even though it has not been proven

23 directly.  You are entitled to consider both kinds of

24 evidence.  The law permits you to give equal weight to

25 both, but it is for you to decide how much weight to

give to any evidence.

Certain things are not evidence and you may not consider them in deciding what the facts are.  I will list them for you:

1.  Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

2.  Questions and objections by lawyers are not evidence.  Lawyers have a duty to their clients to object when they believe a question or exhibit is improper under the rules of evidence.  You should not be influenced by the objection or by my ruling on it.

3.  Anything that I've excluded from evidence and instructed you to disregard is not evidence.  You must not consider such evidence.

4.  Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at trial.

5.  The indictment is not evidence.  This case, like most criminal cases, began with an indictment.

1    You will have that indictment before you in the course

2    of your deliberations in the jury room.  That

3    indictment was returned by a Grand Jury, which heard

4    only the Government's side of the case.

5         I caution you, as I have before, that the fact

6    that these defendants have had an indictment filed

7    against them is no evidence whatsoever of their guilt.

8    The indictment is simply an accusation.  It is the

9    means by which the allegations and charges of the

10   Government are brought before this court.  The

11   indictment proves nothing.

12        Part two, the elements of the offenses charged.  I

13   come now to the second part of my instructions, the

14   elements of the offenses the Government has charged and

15   what it must prove beyond a reasonable doubt to make

16   its case.

17        In general, the indictment charges that the

18   offenses were committed around or on or about certain

19   dates or on approximate dates.  It is sufficient if the

20   Government proves beyond a reasonable doubt that the

21   offenses were committed on dates reasonably near the

22   dates charged.

23        It is the defense of each defendant that he did

24   not have the intent required for any of the specific

25   crimes charged.  It is the Government's burden to prove

beyond a reasonable doubt each of the elements of the charged crime, including the necessary intent on the part of a particular defendant with respect to that crime.

By way of introduction, I instruct you that under the Internal Revenue Code, if any person liable to pay any tax neglects or refuses to pay that tax within ten days after notice and demand, the Internal Revenue Service may collect that tax by levy upon the property and rights to property belonging to that person. The Internal Revenue Service does not need a court order or a warrant to levy property or fines. Instead, individuals may appeal or challenge the levy in court after it's collected.

I also instruct you that a person is required to file a federal income tax return for any calendar year in which he had gross income in excess of a certain statutory amount set by law on or before April 15 following the close of the calendar year, unless an extension is granted. If April 15 fell on a holiday or weekend, the duty for the return is the next business day.

In this case, the threshold amounts and filing days were as follows, and there's a table there for you and you'll see for calendar year 2008, filing threshold

1    is $8,950.  The due date of return was April 15, 2009.

2         For calendar year 2009, the filing threshold was

3    $10,750.  Due date of return was April 15, 2010.

4         For calendar year 2010, the filing threshold was

5    $10,750.  The due date of return was April 18, 2011.

6         For 2011, the filing threshold was $10,950.  The

7    due date of return was April 17, 2012.

8         For calendar year 2012, the filing threshold was

9    $11,200.  The due date of return was April 15, 2013.

10        Gross income includes the following:

11        1.  Compensation for services including fees,

12   commissions and similar items.

13        2.  Gross income derived from business.

14        3.  Gains derived from dealings in property.

15        4.  Interests.

16        5.  Rents.

17        6.  Royalties.

18        7.  Dividends.

19        8.  Alimony and separate maintenance payments.

20        9.  Annuities.

21        10.  Income from life insurance and endowment

22   contracts.

23        11.  Pensions.

24        12.  Income from discharge in indebtedness.

25        13.  Distributed share of partnership gross

1   income.

2       14.  Income in respect of a decedent.

3       And 15.  Income from an interest in an estate or

4   trust.

5       Part A.  Charges against F. William Messier.

6   Count 1, attempt to interfere with the administration

7   of Internal Revenue laws.  F. William Messier is

8   charged with corruptly trying to obstruct or impede the

9   administration of Internal Revenue laws from

10   approximately January 1, 1999 through approximately

11   April 15, 2015, in the ways charged in Count 1 of the

12   indictment.

13       It is against federal law to corruptly try to

14   obstruct or impede the administration of Internal

15   Revenue laws.  For you to find F. William Messier

16   guilty of this crime, the Government must prove each of

17   the following things beyond a reasonable doubt:

18       First, that within the approximate dates charged,

19   F. William Messier did one or more of the things

20   charged in Count 1 in an effort to obstruct or impede

21   the due administration of the Internal Revenue laws in

22   the manner charged.

23       And second, that he did so corruptly.

24       To "obstruct or impede" means to hinder, interfere

25   with, create obstacles or make difficult.  To "act

1  corruptly" means to act with the intent to secure an

2  unlawful advantage or benefit or financial gain for

3  one's self or for another.

4      The acts themselves need not be illegal so long as

5  the defendant commits them to secure an unlawful

6  benefit for himself or for others.  The Government does

7  not have to prove that the effort to obstruct or impede

8  succeeded.

9      Counts 3 through 7, failure to file a tax return.

10  In Count 3 through 7, F. William Messier is charged

11  with willful failure to file a federal tax return for

12  the tax years 2008, 2009, 2010, 2011 and 2012

13  respectively.  It is against federal law to engage in

14  such conduct.

15      For you to find F. William Messier guilty of each

16  of these charges, the Government must prove each of the

17  following three things beyond a reasonable doubt:

18      First, that F. William Messier was required to

19  file an income tax return for the year in question.

20      Second, that F. William Messier failed to file an

21  income tax return for that year.

22      And third, that F. William Messier acted

23  willfully.

24      To prove that F. William Messier acted willfully

25  under these counts, the Government must prove beyond a

reasonable doubt that F. William Messier knew that he had a duty to file a return, that he voluntarily and intentionally violated that known legal duty, and that his failure to file a return was not a result of ignorance or misunderstanding of the tax laws. Mere negligence, even gross negligence or recklessness, does not constitute willfulness under the criminal law.

In deciding whether F. William Messier knowingly failed to file a return, you may infer that he had knowledge of his duty to file if you find that he deliberately closed his eyes to what otherwise would have been obvious to him. In order to infer knowledge, you must find that two things have been established.

First, that F. William Messier was aware of a high probability of his duty to file.

Second, that he consciously and deliberately avoided learning that he actually had the duty; that is to say that F. William Messier deliberately made himself blind to his duty to file.

It is entirely up to you to determine whether he deliberately closed his eyes to the fact that he had a duty to file and, if so, what inference, if any, should be drawn. However, it is important to bear in mind that mere negligence or recklessness or mistake in failing to learn of his duty to file is not sufficient.

There must be a deliberate effort to remain ignorant of his duty to file.

One does not act willfully if he believes in good faith that he's acting within the law or that his actions comply with the law.  A good faith belief is one that is honestly and genuinely held.  Therefore, if F. William Messier subjectively believed as a result of misunderstanding the tax statutes that the tax statutes did not require him to file a return, he cannot be said to have the criminal intent required to commit the offense of willful failure to file income tax returns.

In proving willfulness, it is the Government's burden to prove beyond a reasonable doubt that F. William Messier did not act with a good faith belief as to what the law required of him.  If you find F. William Messier believed in good faith that he was acting in compliance with the tax statutes by not filing a particular federal income tax return, then you must find him not guilty as to that count.

The belief about the duty to file need not be objectively reasonable to be held in good faith. Nevertheless, you may consider whether F. William Messier's state of belief about his duty to file was reasonable as a factor in deciding whether he honestly or genuinely held that belief.

1    You may also consider his attitude toward the

2    Internal Revenue Service in determining whether he

3    honestly or genuinely held the belief.  In considering

4    whether F. William Messier had a good faith

5    misunderstanding of the duty to file, you must make

6    your decision based upon what he believed in his own

7    mind and not upon what you or someone else believes or

8    thinks F. William Messier ought to believe.

9    Whether you believe that F. William Messier's

10   beliefs about the legality of his actions were right or

11   wrong, reasonable or unreasonable, is irrelevant to the

12   issue of willfulness.  The only issue is whether those

13   beliefs were, in fact, held by F. William Messier.

14   However, if you find that F. William Messier

15   failed to file not because of a misunderstanding or

16   ignorance of what the tax statutes required, but

17   because he disagreed with the tax laws, or the

18   authority of the Internal Revenue Service, or because

19   he believed the tax laws were not valid or

20   constitutional, such beliefs do not negate willfulness

21   and are not considered a good faith misunderstanding of

22   the law.

23   Part B, charges against both F. William Messier

24   and David Everett Robinson.  Count 2, conspiracy to

25   defraud the United States.

F. William Messier and David Everett Robinson are both accused of conspiring to defraud the United States by impeding the Internal Revenue Service from collecting federal income taxes due from F. William Messier.  It is a federal crime to conspire to defraud the United States.

For you to find a particular defendant guilty of conspiracy, you must be convinced that the Government has proven each of the following things beyond a reasonable doubt:

First, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to defraud the United States by dishonest means.

Second, that the defendant you are considering willfully joined in that agreement.

And third, that one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy.

The words "to defraud" include cheating the Government out of money or property and also include interfering with or obstructing lawful Government functions by deceit, craft, trickery or means that are dishonest.

A "conspiracy" is an agreement, spoken or

1    unspoken.  The conspiracy does not have to be a formal
2    agreement or plan in which everyone involved sat down
3    together and worked out all the details.  But the
4    Government must prove beyond a reasonable doubt that
5    those who were involved shared a general understanding
6    about the purpose of the conspiracy to defraud the
7    United States.

8        Mere similarity of conduct among various people,
9    or the fact that they may have associated with each
10   other or discussed common aims and interests does not
11   necessarily establish proof of the existence of a
12   conspiracy, but you may consider such factors.

13       To act "willfully" under this count means to act
14   voluntarily and intelligently and with the specific
15   intent to defraud the United States by impeding the
16   Internal Revenue Service in its collection efforts
17   against F. William Messier; that is to say to act --
18   that is to say with bad purpose, not to act by
19   ignorance, accident or mistake.

20       On this count, the Government does not have to
21   prove that a particular defendant knew that his conduct
22   was illegal.  The Government must prove two types of
23   intent beyond a reasonable doubt before a particular
24   defendant can be said to have willfully joined the
25   conspiracy; an intent to agree and an intent, whether

1  reasonable or not, to defraud the United States as

2  charged.   Intent may be inferred from the surrounding

3  circumstances.

4      Proof that a particular defendant willfully joined

5  in the agreement must be based upon evidence of his own

6  words and/or actions.  You need not find that a

7  particular defendant agreed specifically to or knew

8  about all the details of the conspiracy to defraud the

9  United States, or knew every other co-conspirator, or

10  that he participated in each act of the agreement or

11  played a major role, but the Government must prove

12  beyond a reasonable doubt that he knew the essential

13  features and general aims of the venture.

14      On the other hand, a person who has no knowledge

15  of the conspiracy, but simply happens to act in a way

16  to further some object or purpose of the conspiracy

17  does not thereby become a conspirator.

18      I've already instructed you on the concept of

19  deliberately closing one's eyes to knowledge.  You may

20  not use that concept in determining whether a

21  particular defendant reached an agreement with another,

22  but you may use it in considering whether the

23  Government has proven beyond a reasonable doubt that a

24  particular defendant knew that the purpose of the

25  agreement or conspiracy was to defraud the United

1   States.

2        An "overt act" is any act knowingly committed by

3   one or more of the conspirators in an effort to

4   accomplish some purpose of the conspiracy.  Only one

5   overt act has to be proven.  The Government is not

6   required to prove that a particular defendant

7   personally committed or knew about the overt act.  It

8   is sufficient if one conspirator committed one overt

9   act at some time during the period of the conspiracy.

10       The Government does not have to prove that the

11  conspiracy succeeded or was achieved.  The crime of

12  conspiracy is complete upon agreeing to defraud the

13  United States and the commission of one overt act.

14       Now, ladies and gentlemen, we have a jury verdict

15  form for you and I'm going to ask you to turn to that

16  with me now.  It's Page 19 and 20 of the charge that

17  was handed to you.  You'll see it bears the caption of

18  the case at the top and then it goes down count by

19  count and you will, as you reach your verdict, fill in

20  each of the lines that have a blank line.

21       So it goes Count 1, attempt to interfere with

22  administration of Internal Revenue laws.  We the jury

23  find the defendant F. William Messier -- you'll fill in

24  either not guilty or guilty.

25       Count 2 is conspiracy to defraud the United

1    States.  Again, we the jury find the defendant F.

2    William Messier -- you will fill in either not guilty

3    or guilty, and then it reads, we the jury find the

4    defendant David Everett Robinson -- you'll fill in

5    either not guilty or guilty.

6         And it goes to Count 3, failure to file an income

7    tax return for 2008.  You'll fill in the line that

8    says, we the jury find the defendant F. William Messier

9    either not guilty or guilty.  Count 4 is the same for

10   2009, Count 5 is the same for 2010, Count 6 is the same

11   for 2011, Count 7 is the same for 2012.  So you will

12   fill in each of those blank lines either not guilty or

13   guilty.

14        I'm going to ask you to put down the instructions

15   now.  We will come back to what you do in the jury room

16   after we hear the lawyers closing arguments, but now

17   we're going to hear closing arguments from the lawyers.

18        This is the time and the opportunity for the

19   lawyers to summarize and argue the case in the light

20   most favorable to their clients.  You may remember at

21   the beginning of the trial I said they weren't supposed

22   to argue in opening statements.  Now, they're entitled

23   to argue to you.

24        They're going to be referring to the evidence

25   that's come in.  They will probably refer to the law as

1    I've given them to you, but remember two things.  If

2    they say anything about the evidence that seems to be

3    different from what you heard, it's your recollection

4    that controls.  If they say anything to you about the

5    law which seems different from what I said, it's my

6    instructions on the law that controls.

7         But I think you'll find the arguments helpful.  I

8    invite you to listen to them carefully.  The procedure

9    we follow is that the Government gets to go first and

10   then each of the defendants' lawyers gets to argue and

11   then the Government gets a brief rebuttal at the end.

12        And the lawyers have agreed on dividing up the

13   tasks from time to time and I understand Mr. Chapman,

14   you're going to present the Government's first

15   argument.

16        MR. CHAPMAN:  Thank you, Your Honor.  May it

17   please the Court, counsel, ladies and gentlemen of the

18   jury, good morning.  At the beginning of the case my

19   colleague, Ms. Kelly, asked you to ask yourself -- as

20   you listened to the evidence and examined the

21   witnesses, to ask yourself this question, did Mr.

22   Messier believe he was complying with the law or was it

23   just a game for him?

24        Now, you heard the answer from Nancy Darling from

25   the Town of Brunswick.  She's the finance clerk that

1    Mr. Messier came to see after the IRS levied Town of

2    Brunswick payments.  She told you that she warned Mr.

3    Messier that he's following a dangerous path.  Aren't

4    you worried about going to jail?  And Mr. Messier told

5    her I'm having too much fun with this.  He was enjoying

6    it.  He was enjoying the game he was having.

7        For over 15 years, F. William Messier hasn't filed

8    a federal income tax return and he did everything he

9    could to get underneath the IRS's radar.  He filed

10   false forms claiming to be exempt.  He cashed most of

11   his customers checks to keep the cash out of the bank

12   account where the IRS could find it, and during the

13   years 2008 through 2012, he made over $450,000 from

14   tower leases on his land, but he refused to file a

15   return.

16       Then in 2012, the IRS finally caught up with him.

17   It was time to pay the piper and defendant Messier,

18   with his friend Everett Robinson, worked together to

19   impede and impair the IRS from collecting the taxes

20   that Messier owed on old years 2000 through 2004.  He

21   did that -- they did that by filing bogus money orders,

22   by misleading and harassing the customers of defendant

23   Messier, trying to prevent them from making the

24   payments that the IRS required them to pay over to the

25   IRS.

1      You know, there was a Supreme Court Justice who

2    served over 100 years ago in the early 1900's, his name

3    was Oliver Wendell Holmes.  In one of his cases, he

4    wrote a decision in which he had a famous quote about

5    taxes.  He said taxes are the price we pay for a

6    civilized society, and it's important to remember that,

7    especially at this time of year.

8      Now, if you go to Washington, DC, if you happen to

9    be a tourist visiting the Smithsonian and you walk out

10   the back door of the Natural History Museum, you'll

11   look up and you'll see the IRS headquarters building

12   and that's the quote right above the front door; taxes

13   are the price we pay for a civilized society.

14     We pay for the national defense, including the

15   ships that are built at Bath Iron Works.  It pays for

16   Social Security.  It pays for the FCC so that the

17   airwaves are running efficiently.  They pay for the

18   Federal Aviation Administration so that the planes are

19   flying safely and the pilots are competently licensed.

20   They pay for all of the goods and services that we all

21   expect from the federal Government.  They pay for this

22   courthouse, the system of justice that we have.

23     Now, on behalf of myself and my colleague, Ms.

24   Kelly, and Agent Coviello, I want to thank you for the

25   attention you've given to this case over the past week

1    and for you fulfilling one of the great civic duties

2    that we all have and I wish -- I wish I felt my best

3    this week when I presented this case.  You can tell

4    that I'm suffering from a horrible cold.  I'm still

5    suffering from it slightly, that's why I'm standing

6    back here, not getting any closer to you, but I'm going

7    to spend the next 40 minutes or so going over the

8    evidence and showing you why you should find both

9    defendants in this case guilty on all counts as they

10   are charged with.

11        Now, your job throughout the deliberations in this

12   case, as Ms. Kelly asked you at the beginning, was to

13   review and go over the evidence and use your common

14   sense.  You folks are the judges of the facts, not the

15   experts in this case.  You folks are the judges of the

16   facts and after reviewing all of the evidence and

17   applying the law as given by Judge Hornby, I'm

18   confident you'll make a determination that the

19   defendants are guilty.

20        Now, as Judge Hornby just described to you, the

21   indictment in this case charges defendant F. William

22   Messier with seven counts.  The first count charges

23   that beginning in 1999 and continuing through 2014, he

24   corruptly endeavored to obstruct or impede the due

25   administration of the Internal Revenue laws.

1          Count 2 charges the conspiracy count against both

2    defendants and Counts 3 through 7 charge the willful

3    failure to file counts.  I'm going to start with those

4    counts, the willful failure to file counts.

5          Now, as the Judge just instructed you, in order to

6    find the defendant guilty of this offense, we have

7    certain elements that the Government has to prove

8    beyond a reasonable doubt.  So in Counts 3 through 7,

9    we have to prove first that F. William Messier was

10   required to file income tax returns for the year in

11   question; second, that he failed to file an income tax

12   return for that year; and third, that he acted

13   willfully.

14         So let's see what the evidence is for each of

15   those elements.  Now, I'm going to suggest to you that

16   there's really no dispute in this case that he was

17   required to file a return.  Maybe you'll hear something

18   differently after I sit down, but there's no question

19   that he earned far more than the filing threshold for

20   each of the years in question, 2008 through 2012, and

21   there's certainly no question that he failed to file a

22   return for those years.

23         So the real issue in this case with respect to

24   these counts is whether Mr. Messier acted willfully.

25   That means did he act -- did he intentionally violate a

1    known legal duty, a legal duty to file a tax return.

2        So the instructions in this case you've just heard

3    tells you that to act willfully does not mean to act

4    with ignorance of the law or act with negligence or act

5    recklessly.  You have to be -- you have to

6    intentionally violate a known legal duty and that's in

7    place for a good reason.

8        If you have a complicated tax return that an

9    accountant prepared and you rely on him and he misses

10   something in the paperwork and doesn't put all the

11   income on the return, and you sign it believing that

12   that return is accurate, then you're not acting

13   willfully in that case because you believed it was

14   accurate.

15       If you had a small amount of income or just over

16   the filing threshold, but you lost one of your W2's so

17   you thought you were below the filing threshold and you

18   didn't file, you didn't act willfully in that case

19   because you made a mistake.

20       If the tax law is complicated, perhaps you didn't

21   act willfully, but folks, what was the complicated

22   issue in this case?  There is no issue with respect to

23   whether or not he was required to file.

24       You saw in each of the years in question, 2008

25   through 2012, Mr. Messier earned well above the filing

threshold for each of these years.  Not just above, not

was there any question whether he had to file or not.

Each of those years he earned income from the land that

he owned far in excess of the filing threshold amounts

for each of these years.

Now, there was some discussion in this case from

the testimony about Mr. Messier claiming that well,

wages are not taxable because it's an exchange of labor

and it's not a profit, but he's not a wage earner

during those years.  He's not working for BIW anymore.

He's a landowner, he's collecting money from leases.

And you heard from Judge Hornby about the

definition of gross income, right out of the code,

which defendant Messier testified that he studied

religiously, and so there's no question that he earned

enough income to file and that he didn't file.  In

fact, there's plenty of evidence in this case that the

defendant knew he had a duty to file in each of these

years.

We know that he filed when he was a young man.  He

filed all of the way through -- in this case we have

evidence that he was filing in the early '90s.  He

continued to file until 1996 when he filed his '96

return in '97.  That was the last return he filed.

So you know from the evidence in this case that at

1    least at some point in his life, he knew what the law

2    was about filing tax returns, and it's not a

3    complicated issue with the tax law.  It's something

4    that -- when you use your common sense and go back in

5    the jury room to discuss this, it's something that

6    you'll know that everybody understands at a fairly

7    early age; when you earn enough money, if you go over

8    the threshold amount, you have to file a tax return.

9        But now, Mr. Messier is testifying or has

10   testified that at the age of 70, a man who was born and

11   raised in the United States and who's making a great

12   living from collecting rents from his towers, he's

13   claiming that he didn't understand that he didn't have

14   -- he didn't understand of his duty to file.

15       Well, in fact, the evidence is he made a conscious

16   decision to ignore the law out of his own

17   self-interests.  Does he really believe that he doesn't

18   have to file tax returns to pay for services he now

19   uses, such as his pilot's license or the FCC airwaves

20   or Social Security benefits?

21       According to the defendant, he filed up until

22   1996, but then he started getting curious.  He watched

23   the Libertarian Convention on C-SPAN, and at that

24   point, he decided to ignore the law and stop filing.

25   In fact, he's given various witnesses in this case

1    various explanations as to why he claims he no longer

2    has a duty to file.

3          Lisa Pelletier, his daughter, told you on the

4    first day of the trial that he claimed that taxes were

5    unconstitutional and that she was actually breaking the

6    law by filing tax returns.  And you know from the

7    instructions that we just heard that arguments about

8    the Constitution and the wording of the tax laws does

9    not negate willfulness.

10         He told Gail Huddy, who was a former return

11   preparer herself, that taxes were illegal.  He told

12   Nancy Darling that only Washington, DC residents and

13   residents of Guam and other federal territories were

14   required to pay income taxes.  He told Elizabeth Reno

15   from the bank that if you don't take anything from the

16   Government, then you don't have to pay.  Well, we know

17   he was taking from the Government so why doesn't he

18   pay?

19         And then in some documents that he sent to the

20   IRS, he makes an initial constitutional argument about

21   the tax system.  Like in Exhibit 2E, which is in

22   evidence, this is Exhibit 2E, it's something that was

23   submitted to Jolene Hendershot from the IRS Collection

24   Division.

25         This particular page deals with the notices of

1    levy and there's 4th Amendment references, 5th

2    Amendment references all through that document, but

3    this exhibit also includes constitutional arguments

4    with respect to the liability of income taxes.

5          If you go towards the end of that document, here

6    he makes a federal jurisdiction argument and he cites

7    another part of the Constitution to justify his

8    purported belief that only Washington, DC residents and

9    federal territory residents are required to file.

10   That's a constitutional argument, and the Judge has

11   instructed you that constitutional arguments do not

12   negate willfulness.

13         This all tells you one thing, that the defendant

14   hates paying taxes.  He knows the law, but -- although

15   it's his defense, if you believe in good faith that he

16   was acting within the law, you may consider his stated

17   beliefs about the income tax system, his anti-tax

18   beliefs when you consider whether his actions were

19   willful.  You may also consider the reasonableness of

20   his arguments in determining whether or not his actions

21   were willful.

22         But if he disagreed with the tax law, if you find

23   that he challenges or disagrees with the authority of

24   the Internal Revenue Service, or if he didn't file

25   because he believed the tax laws were not valid or not

constitutional, those beliefs do not negate willfulness
and are not considered a good faith misunderstanding of
the law.  That's what you heard from the defendant when
he was on the witness stand.

To the extent that you believe anything he said,
the one takeaway from his testimony is that he
disagrees with the ways the tax laws are being
administered.  That's a direct quote, I disagree with
the way the tax laws are being administered.  That's a
disagreement with the law because the tax laws are
administered by the IRS and are enforced by the courts.
That's not a good faith misunderstanding of the law,
folks.  That is a man who's consciously making a
decision to break the law for his own self-interests.

Remember when the defendant was on the stand he
talked about his watching the Libertarian Convention
speech of Harry Brown.  He thought that was so
wonderful because Harry Brown said if I'm elected
President of the United States, as a Libertarian party
candidate, the first thing I'm going to do when I wake
up as President, before lunch I'm going to abolish the
income tax system and Mr. Messier thought that was
wonderful.  That was just what he wanted to hear.

Well, isn't that -- doesn't that mean that there
is an income tax system that applies to everybody?  Is

1    Harry Brown running for President just to abolish
2    income taxes for Washington D.C. residents or for the
3    people of Guam?  The reason it was so appealing to Mr.
4    Messier was because he wanted the Libertarian party
5    candidate to abolish income taxes that he knew he was
6    required to pay.
7          The defendant was also a big fan of Irwin Schiff.
8    Irwin Schiff appeared briefly in that -- he testified
9    that Irwin Schiff appeared in that video that we saw a
10   clip of during his testimony, "The Freedom of Fascism"
11   video, the conspiracy theory video.  Schiff was a big
12   part of that video and on cross-examination, at first
13   you recall he claimed he did not really know who Schiff
14   was or -- I'm sorry, not know that Schiff had been
15   convicted of tax crimes, this man who Messier thought
16   was so persuasive.  Then he does admit, then the
17   defendant does admit that he had been convicted of
18   crimes, but he says not tax crimes, and then he
19   testified he wasn't sure if tax evasion was even a tax
20   crime.
21         He also claimed to be influenced by Bob Schultz of
22   We the People Foundation group.  He also prepared a
23   video clip that you saw, but he's also admitted -- that
24   is, the defendant Messier also admitted, after some
25   prodding on cross-examination, that he may have known

1    individuals associated with Bob Schultz's group were

2    convicted of tax crimes.

3          So, you know, when you go back into the jury room

4    and use your common sense and consider the statements

5    of the defendant, ask yourself this; when the people

6    who are supposedly influencing you to believe that you

7    don't have to file an income tax return are themselves

8    convicted of tax crimes, isn't that a red flag that

9    perhaps their information is not accurate?

10         Did he genuinely believe that their advice was in

11   compliance with the law or was he playing a game?  Was

12   the defendant taking a calculated risk that the IRS

13   wouldn't find him up on his hill in Brunswick, with the

14   millions of tax -- of individuals who aren't filing tax

15   returns, will they ever catch up with him?  He took a

16   risk and he was caught.

17         Now, the defendant also claimed on the witness

18   stand that he was greatly influenced by the Freedom Law

19   School.  You remember on direct examination, Mr. Minns

20   asked him if he attended the Freedom Law School in 2009

21   and he said he did.  And then Mr. Minns asked him if

22   this was an accredited law school and the defendant

23   said well, I'm not really sure.

24         On cross-examination anyway, he didn't attend any

25   law school, he bought a package over the Internet from

1      a group calling themselves the Freedom Law School and

2      this group didn't want any checks from their customers.

3      They just wanted cash of $9,600 or a postal money

4      order.

5           You also found out that, on cross-examination, he

6      didn't join this group in 2009 as he testified to on

7      direct, he joined it in 2012 after the IRS had started

8      levying his payments.  And then you know from his

9      direct testimony that he says I -- that the Freedom Law

10     School folks 100 percent corroborated my beliefs and

11     that's why he firmly believed in what he was doing was

12     correct.

13          But on cross-examination when he was confronted

14     with some of the materials from the Freedom Law School,

15     you know that their material included a disclaimer of

16     sorts.  The Freedom Law School folks said that there

17     are a lot of bogus theories out there, theories that

18     don't work, so this is a warning.

19          Some of those theories that didn't work, according

20     to the Freedom Law School, was anything having to do

21     with the UCC, anything having to do with the strawman

22     redemption, anything having to do with the gold flag

23     theory, which the defendant on the stand said he

24     adhered to, and the Freedom Law School folks said these

25     theories are bogus and if you believe them, it's just

like believing in fairy tales and unicorns.  So the

Freedom Law School, which the defendant first testified

to backed up his theories 100 percent, in fact said the

opposite in those materials.

So these are the kind of people and outfits that

just want to receive cash from their customers, these

are the kind of folks, convicted tax felons and

Internet websites that the defendant finds or claims to

find credible.  More credible than his own attorney,

Mr. Livesay, his business attorney up in Brunswick who,

in a meeting with Pelletier -- with his daughter, Lisa

Pelletier, he advised Ms. Pelletier you better be

filing your income tax returns.  I advise you to file

your income tax returns because that's the law, and the

defendant was sitting there for that conference.

The defendant claims that he finds these people he

meets over the Internet more credible and more

influential and more accurate than Attorney Livesay up

in Brunswick or other friends and business associates

who warned him over the years that he was following a

dangerous path.

Now, I remind you that Mr. Messier claims to have

researched the tax laws for up to ten hours a day.  He

said he studied the tax code over and over, cover to

cover and he even slept with it.  But he also claims

1    that he's a resident of Maine who has more than

2    80,000 -- well, he also claims he sincerely believes

3    he's a resident of Maine who makes over $80,000 a year

4    from this property and he's not required to file.

5    That's just not credible.

6        When you consider the evidence of willfulness in

7    this case, go back to Judge Hornby's instruction about

8    knowledge and willful blindness. He said that you may

9    infer that he had knowledge of his duty to file if you

10   find that he deliberately closed his eyes to what

11   otherwise would have been obvious to him; in other

12   words, was he acting like an ostrich.

13       You know what an ostrich is? They are out of

14   Australia, big ugly birds with long necks and long

15   legs. When they sense danger, ostriches stick their

16   heads in the sand. That's their defense mechanism.

17   They just believe that the danger is going to be

18   non-existent.

19       Defendant Messier in this case was acting like an

20   ostrich to some extent because he was ignoring the

21   evidence right in front of him, that the things he was

22   doing and the people he was listening to was a

23   dangerous, dangerous path. In fact, the defendant told

24   you on the stand that he picks and chooses what he

25   likes to believe in. He picks and chooses.

1          He picks guys like Irwin Schiff, Bob Schultz,

2     Freedom Law School, some other websites on the

3     Internet, and apparently doesn't see evidence that some

4     of these same people were convicted of tax crimes.  He

5     apparently never saw newspaper articles that folks were

6     getting prosecuted all the time for failure to file.

7     He apparently has done Internet searches on some of the

8     folks that he claims to believe in.  He picks and

9     chooses.

10          He picks the stuff he wants to see that backs up

11     his purported belief, but he chooses to ignore what

12     everybody knows, that you have to file a return if

13     you're making 80 to $100,000 a year.

14          Now, Count 2 of the indictment charges Mr. Messier

15     with corruptly endeavoring to obstruct or impede the

16     due administration of the Internal Revenue laws by

17     failing to file tax returns or pay any taxes and by

18     committing a number of specific acts that impeded the

19     IRS.  And to start with this offense, we have to prove

20     beyond a reasonable doubt --

21               THE COURT:  You said Count 2, did you mean

22     Count 1?

23               MR. CHAPMAN:  I did mean Count 1, thank you.

24     First, that within the approximate dates charged, F.

25     William Messier did one or more of the things charged

 1      in Count 1 in an effort to obstruct or impede the due

 2      administration of the Internal Revenue laws in the

 3      manner charged; and second, that he did so corruptly.

 4           And the phrase "to obstruct or impede" means to

 5      hinder, interfere with or create obstacles to make

 6      difficult, and the word "corruptly" just means to act

 7      with an intent to secure an unlawful advantage or

 8      benefit or financial gain for one's self or one

 9      another.

10           So let's take a look at the evidence in that case.

11      When you go back to the jury room and look at the

12      indictment, one of the first things that he's charged

13      in that count is the use of false W-9 forms and false

14      W-8 BEN forms, and those documents were introduced into

15      evidence and I'll show you a few of them now.

16           This is 27-B-2.  This is one of the W-9 forms that

17      he said -- I believe this was to Northeast Security.

18      This is not even a real form, ladies and gentlemen.

19      This is a false, fictitious form that he gets from

20      somewhere and he's sending in for the sole reason of

21      preventing the recipient from issuing a 1099.

22           In fact, in the case of Northeast Security, you

23      heard from Nancy Spinney that well, she didn't

24      recognize this to be anything other than legitimate and

25      because he claims he's exempt, she didn't issue him any

1    more 1099s.

2         We know from the evidence admitted, there is also

3    the same type of forms in the records submitted by

4    T-Mobile and U.S. Cellular.  Now, we don't have

5    witnesses from those companies, but those records are

6    in evidence and you may consider those documents as

7    authentic business records just as well if a witness

8    appeared to testify about them.

9         32-C, so these -- and the false W-8 BEN forms,

10   they were submitted to Atlantic Coast Radio, to

11   Critical Alert Systems and the Town of Brunswick, all

12   in an effort to obstruct customers from treating him

13   like a taxpayer.

14        You also know from the bank records and the

15   testimony of several witnesses that the defendant liked

16   to deal in cash.  He liked to get paid in cash whenever

17   possible, liked to cash his checks so he didn't have to

18   keep a lot of cash in the bank, and he told his

19   daughter he was doing this to keep it from the IRS,

20   keep it from the scrutiny of the IRS and to keep it

21   away from the IRS.

22        Then beginning in 2012, you know from the evidence

23   that once the levies were issued by Jolene Hendershot,

24   the defendant began a massive campaign, with the help

25   of his friend David Robinson, to deceive customers into

believing -- to harass his customers into stop paying

the levy payments.

     Now, Mr. Robinson's not charged in the corruptly

endeavor count, but those acts, all that same evidence

is charged as part of the 7212(a) count against Mr.

Messier.

     You recall also the testimony of Geoff Bates and

Monica Russell and Lisa Menconi, Nancy Darling.  They

all told you about how defendant Messier came -- either

spoke to them in-person or called him on the phone or

sent e-mails and instructed them and then -- instructed

them not to make the levy payments, not to issue any

more 1099s or else, I would submit to you.

     In this case, you know, these customers relied on

these towers up on Bill's hill and none of them were

happy to come here to court to testify because their

businesses still rely on the towers up on Bill's hill.

They told you that he instructed them not to comply

with the levies.

     Some of them did what he said.  Some -- most of

them didn't, but when you deliberate over Count 2, make

sure you pay attention to the instructions on the law

in this count because unlike the failure to file

counts, that's not a defense that defendant Messier had

a good faith misunderstanding of the law.  You won't

1    find that instruction in this particular count.

2         The -- and you'll also notice in the instructions

3    that the IRS -- that the IRS levies were perfectly

4    legal.  The IRS does not need a court order or court

5    warrant to levy fines of a person who is liable for

6    income taxes.

7         In this case, the defendant received notice that

8    he was liable, that's Exhibit 2-A, and three months

9    later, the IRS began issuing these levies.  So if the

10   defendant had a problem with the amount of the tax

11   assessment, he can challenge or appeal that assessment

12   through normal channels.  You don't have a right to

13   obstruct the IRS just because you're anti-tax or

14   anti-Government and just because you don't agree that

15   the laws apply to you.

16        So I submit that all of the acts alleged in the

17   7212(a) count were done corruptly --

18             THE COURT:  The jury doesn't know that, that

19   7212 -- Count 1 you're referring to.

20             MR. CHAPMAN:  Thank you.

21             THE COURT:  The lawyer is referring to a

22   section of the code.  You don't need to know what the

23   number is.

24             MR. CHAPMAN:  I submit that all of those acts

25   charged in Count 1 were done corruptly to secure an

1   unlawful advantage, so that the payments weren't made

2   to the IRS, so that customers wouldn't submit 1099s to

3   the IRS, so that the IRS couldn't find funds belonging

4   to the defendant when it was time to collect.  The

5   Government only has to prove that he comitted one of

6   these acts.

7       Finally, the conspiracy count which is alleged

8   against both defendants, you'll know that a conspiracy

9   count is essentially an agreement to do something

10  that's unlawful.  In this case, the purpose of the

11  agreement was to defraud the United States by dishonest

12  means.

13      The term defraud is not limited to cheating the

14  Government out of money.  It means to obstruct lawful

15  governmental functions by deceit, craft, trickery or

16  means that are dishonest.  Here, there's no question

17  that there was an agreement between the two defendants

18  to obstruct the IRS, I submit.

19      This agreement had as its purpose to try to

20  obstruct the IRS in collecting the taxes that Mr.

21  Messier owed from 2000 to 2004.  The actions that

22  defendant Messier and defendant Robinson took beginning

23  around February 2012 were all designed to deceive the

24  IRS, especially deceive Messier's customers from making

25  levy payments.

1        Now, the Government doesn't have to prove that the
2    conspiracy succeeded, just that there was an intent to
3    agree, that there was an agreement, there was intent to
4    join and that one overt act was committed.

5        Also, it's important to remember that with this
6    count, the defendants don't have to know that their
7    conduct was illegal.  The Government does have to
8    prove, as I said, an intent to agree and an intent,
9    whether reasonable or not -- you'll see that in the
10   instructions -- to defraud the United States as charged
11   in the indictment.  But it doesn't matter with this
12   count if defendant Messier or defendant Robinson
13   sincerely believed that Messier didn't owe the taxes.

14       The law doesn't allow you to impede the lawful
15   governmental functions of the United States just
16   because you don't agree with the way the Government is
17   enforcing the law.

18       In this country, you can't decide on your own
19   which laws you choose to obey and which laws you don't.
20   There are other avenues that they could have chosen to
21   dispute these tax assessments and the levy process and
22   he chose to ignore those avenues and instead send
23   misleading and harassing documents to Messier's
24   customers, send a bogus money order to the IRS and they
25   filed harassing lawsuits against these customers and

1    the IRS agents.

2         Now, with respect to this money order, you just

3    heard this morning defendant Robinson knew ten years

4    ago that this so-called strawman account money order

5    scheme was something that didn't really work.  He tried

6    it several times without success.  He claims it's

7    something he's still trying to work out, yet he

8    admitted that he created this money order and when you

9    look at it back in the jury room, it looks at first

10   glance like a legitimate financial instrument.  He sent

11   it to the IRS and then he sent copies to all of the

12   customers hoping that they will be tricked into

13   believing that this tax debt was paid.

14        Again, you heard from Nancy Darling, Nancy

15   Spinney, Monica Russell who all testified the defendant

16   Messier asked or ordered them not to pay the IRS and,

17   in fact, with Lisa Menconi, we have e-mails which are

18   Exhibit 23-M, Exhibit 23-M.

19        You'll have e-mails between Lisa Menconi and the

20   defendant and as you read those e-mails from one to the

21   next, you can see how the defendant's tone in those

22   e-mails gets more and more aggressive and threatening

23   to the point where he says you have ten days to comply

24   or your antennas or your access to your towers will

25   end.  That would essentially put these local radio

stations out of business.  So you can imagine what --
the pressure Lisa Menconi felt during that period and
still feels when she showed up this week.

Again, with respect to the conspiracy count, the
Government doesn't have to prove that the conspiracy
succeeded with its goals and, in fact, in this case it
did succeed to some extent as it delayed the collection
of the taxes owed by Mr. Messier.

They ultimately collected the full amount over a
period of two years and we know that some of these
customers never paid the IRS pursuant to the levies.
Lisa Menconi said she paid two more payments to the
defendant and stopped making any payments.  The IRS
never got any money from Atlantic Coast Radio.  Geoff
Bates paid the IRS, but also continued to pay the
defendant because he wanted to keep his business
intact.

The evidence showed that the defendants got
together, filed this harassing lawsuit against honest
IRS employees who were just doing their jobs.  So in
total, the evidence in this case shows that the
defendants conspired to defraud by deceit or trickery
and dishonest means.

THE COURT:  I apologize again.  The IT people
were up here during the recess trying to get this

```
 1    fixed.
 2           MR. CHAPMAN:  And as you saw early this
 3    morning, David Robinson, this is all a game to him,
 4    this whole strawman experience.
 5           So I'm going to sit down in a few minutes -- well,
 6    in one minute and give the other attorneys a chance to
 7    speak now and after they speak, Ms. Kelly will have an
 8    opportunity to give our rebuttal.
 9           And I said to you, that after you go back to the
10    jury room and sift through all of the evidence and use
11    your common sense and life experiences as the Judge
12    instructed you to do, you'll find the defendants in
13    this case guilty on all counts that they have been
14    charged with.  Thank you.
15           THE COURT:  Thank you, Mr. Chapman.  Let's
16    take a short stretch break, ladies and gentlemen.  You
17    can stand up.
18           MR. MASELLI:  Your Honor, while that's
19    happening, may we approach, please?
20           THE COURT:  Yes.
21           (Sidebar conference)
22           THE COURT:  Go ahead.
23           MR. MASELLI:  Thank you, Your Honor.  I would
24    like to object to the opening of Mr. Chapman's closing
25    argument where he quoted Oliver Wendell Holmes and made
```

1    comments concerning the necessity of the tax system and

2    paying taxes as going into a proscribed area, I

3    believe, of commenting on social policy and urging the

4    jury to convict on the basis of social policy and fears

5    about what would happen if people didn't pay their

6    taxes.

7        I think it was inappropriate and I would ask for a

8    jury instruction that that was inappropriate argument

9    and if my counsel agree -- co-counsel agrees, I would

10   move for a mistrial.

11       MR. MINNS:  Your Honor, I would like to leave

12   this in Mr. -- in my co-counsel's hands and beg to run

13   to the restroom and get back before the arguments

14   start.

15       THE COURT:  Yes.  Mr. Vincent?

16       MR. VINCENT:  Well, I thought it was asking

17   the jury to consider something that was outside the

18   purview of the evidence as well, Judge, so I would join

19   in the objection.

20       THE COURT:  I'm not going to grant the

21   mistrial.  It was not that serious.  There is evidence

22   from witnesses, obviously not from Justice Holmes, but

23   there was evidence from witnesses along the same tenor,

24   and I'm not sure that a curative is needed for the

25   quotation from the Justice, but we had testimony -- I

 1    would think about whether I need to say anything to the

 2    jury at the end of all the closings unless you think

 3    you need it now.  If you need it now, I'll make my

 4    ruling now.  Do you need it now?

 5         MR. MASELLI:  I'll give the Court time to

 6    consider it.  Thank you very much.

 7         THE COURT:  All right.

 8         (Open court)

 9         THE FOREPERSON:  Your Honor.  Could we briefly

10    have a restroom break?

11         THE COURT:  Of course.  Let us know when

12    you're ready.

13       (Jury excused.  Time noted:  11:28 a.m.)

14         THE COURT:  I didn't give Mr. Chapman a chance

15    to speak and I should have on the issues we discussed

16    at sidebar.

17         MR. CHAPMAN:  Well, I didn't think in a

18    million years quoting from a Supreme Court Justice from

19    100 years ago was going to be an issue in this case,

20    but there is testimony in this case that one of the

21    witnesses said essentially the same thing.

22       This is Scott Rivard from Radio Communications

23    Management, he told the defendant Messier again, this

24    country runs on taxes, we have to get taxes and the

25    defendant's reply was, you know, sure, but we're

1    overtaxed.  I mean this is another way of saying the

2    same thing.

3            THE COURT:  I wanted to give you a chance to

4    be heard, but I'll continue to think about it while I

5    hear the rest of the closings.  We can take a brief

6    recess too, counsel, since the jury is taking a

7    bathroom break.

8            (Recess called).

9            (Time noted:  11:30 a.m.)

10           (End of excerpt).

11           (Continued on the following page)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The following is an excerpt).

2          (Open court.  Defendants present).

3          (Jury present).

4          THE COURT:  Thank you, Ms. Kelly.  Ladies and

5     gentlemen, I'll ask you to please pick up the jury

6     charge again.  I'm going to ask you to actually go back

7     to Page 2.  I want to reread something on Page 2.

8          Under Part 1, general rules concerning jury

9     duties, I said before, I'll say it again, it's your

10    duty to find the facts from all the evidence admitted

11    in this case.  To those facts you must apply the law as

12    I give you.  Determination of the law is my duty as the

13    judge.  It's your duty to apply the law exactly as I

14    give it to you, whether you agree with it or not.

15         You must not be influenced by personal likes or

16    dislikes, opinions, prejudices or sympathy.  Opinions

17    means things like opinions about the need for taxes or

18    not.  Sympathy means sympathy for the lawyers, the

19    defendants or the witnesses.  Instead, the next

20    sentence, you must decide the case solely on the

21    evidence and according to the law.

22         And then I want to go back to where we were which

23    is Page 16, Roman Numeral III, jury deliberations.  I

24    come now to the last part of the instructions, the

25    rules for your deliberations.

1      When you return to the jury room to deliberate,

2    you shall discuss the case with the other jurors.  You

3    shall permit your foreperson to preside over your

4    deliberations, and your foreperson shall speak for you

5    here in court.  Your verdict must be unanimous.

6      Your verdict must be based solely on the evidence

7    and on the law as I've given it to you in these

8    instructions.  However, nothing that I have said or

9    done is intended to suggest what your verdict should

10   be.  That is entirely for you to decide.

11     Each of you must decide the case for yourself, but

12   you should do so after considering all of the evidence,

13   discussing it fully with the other jurors, and

14   listening to the views of the other jurors.  Do not be

15   afraid to change your opinion if you think you are

16   wrong, but do not come to a decision simply because

17   other jurors think it is right.

18     This case has taken time and effort to prepare and

19   try.  There's no reason to think it could be better

20   tried or that another jury is better qualified to

21   decide it.  It is important therefore that you reach a

22   verdict if you can do so conscientiously.

23     If it looks at some point as if you may have

24   difficulty in reaching a unanimous verdict and if the

25   greater number of you are agreed on a verdict, the

jurors in both the majority and the minority should

reexamine their positions to see whether they've given

careful consideration and sufficient weight to the

evidence that has favorably impressed the jurors who

disagree with them.

You should not hesitate to reconsider your views

from time to time and to change them if you're

persuaded that this is appropriate.  It is important

that you attempt to return a verdict, but of course,

only if each of you can do so after having made your

own conscientious determination.  Do not surrender an

honest conviction about the evidence simply to reach a

verdict.

After you have reached unanimous agreement on a

verdict, your foreperson will fill in the form that has

been given to you, sign and date it.  Do not give that

form to the jury officer outside your door.  Instead,

just give the jury officer a note that states that

you're ready to return to the courtroom.  After you've

returned to the courtroom, your foreperson will deliver

the completed verdict form as directed in open court.

If it becomes necessary during your deliberations

to communicate with me, you may send a note through the

jury officer, signed by your foreperson or by one or

more members of the jury.  No member of the jury should

1      ever attempt to communicate with me on anything

2      concerning the case except by a signed writing, and I

3      will communicate with any member of the jury on

4      anything concerning the case only in writing or orally

5      here in open court.

6          If you send out a question, I will consult with

7      the parties as promptly as possible before answering

8      it, which may take some time.  You may continue with

9      your deliberations while waiting for the answer to any

10     question.

11         Remember that you're not to tell anyone, including

12     me, how the jury stands numerically or otherwise until

13     after you've been -- until after you've reached a

14     unanimous verdict or have been discharged.

15         Ladies and gentlemen, just give me a couple of

16     moments with the lawyers at sidebar here.

17             (Sidebar conference)

18             THE COURT:  Any additional objections to the

19     charge as delivered?

20             MR. CHAPMAN:  None from the Government, Your

21     Honor.

22             THE COURT:  For Mr. Messier?

23             MR. MASELLI:  Nothing more.

24             MR. VINCENT:  Nothing from me.

25             THE COURT:  Thank you.  Thank you very much.

1           (Open court)

2           THE COURT:  Ladies and gentlemen, I want to

3    add my thanks to the lawyers for the service that you

4    have rendered in this matter and will continue to

5    render during your deliberations.  As they've said,

6    we've all been watching you and have been impressed

7    with how attentive you've been throughout the trial and

8    we appreciate that.  This is an important matter to all

9    of the parties, to the Government and to the defendants

10   and to the lawyers.

11         As I mentioned, this is one of both a privilege

12   and obligation of citizenship to participate as jurors

13   and we thank you for this.  We know it's not always

14   convenient to have to come to the courthouse for

15   several days, but we appreciate you're doing this and I

16   know that you will give the case the same careful

17   consideration in the jury room as you have here.

18         When you return with a verdict, I'll simply give

19   you a quick thank you to send you on your way and I

20   don't want you to think that's lack of gratitude,

21   that's why I'm thanking you now on behalf of the court,

22   on behalf of the parties, on behalf of your fellow

23   citizens for what you're doing here.

24         Now, those of you who do higher mathematics have

25   counted and know that there are 14 of that started, and

reduced to 13 because of sickness, and that 12 people
deliberate on a criminal jury.  What we do is we
empanel a couple of extras because emergencies do
happen, sicknesses, family crises, whatever, and if the
number falls below 12, we have to start over again and
it's very expensive for everybody to do that.

And the alternates are selected at random.  It's
nothing that an alternate has said or done during the
trial, it's a random selection at the beginning.  And
the alternate in this case is Juror Number 6, the
closest one to me in the middle row.  And I know you've
been taking very careful notes, ma'am.

Just a moment before you go.  Just wait a minute.
I want to thank you.  I know this is frustrating to sit
through a trial and then be prevented from the closure
that comes in deliberation, but your presence here has
been just as important as that of all the other jurors.

You can take your notebook back to the jury room.
Leave the notes.  If you want to keep the charge, you
can keep the charge, but we need to destroy your notes.
I'll also ask you not to talk about the case to anybody
until the jury renders a verdict.  Every once in a
while, a juror takes sick during deliberations and if
we have to call you back, it's very important that you
not talk about the case or let anybody talk to you

1    about it.

2        If the lunch is there, you can take your lunch

3    with you and take the charge, but you must leave your

4    notes behind, but again I thank you and have a very

5    pleasant weekend.  And you can call the clerk's office

6    later to find out if there is a verdict or not.  Thank

7    you very much.

8            (Alternate excused).

9        I also want to thank counsel for presenting the

10   case in an efficient and collegial and orderly manner.

11   I think you'll agree it's not like what you see on

12   television, really quite different in a real courtroom

13   as to how the process goes forward, so thank you all

14   counsel for your civility and collegiality.

15       At this time I'll ask the clerk to please swear

16   the jury officer.

17           THE CLERK:  Do you solemnly swear that you

18   will keep this jury in a convenient place until they

19   have agreed, that except by order of this Court, you

20   will allow no one to speak to them nor speak to them

21   yourself unless it is to ask them if they have agreed,

22   nor will you allow them to separate until they have

23   been discharged from their verdict except by order of

24   this Court, so help you God?

25           COURT OFFICER:  I do.

```
 1              THE COURT:  Ladies and gentlemen, we're going
 2    to take a few minutes to get the exhibits in order and
 3    they will follow you to the jury room, probably 5 or
 4    10 minutes after you get there.  I hope lunch has
 5    arrived -- it has arrived, so lunch is waiting for you.
 6         So at this point, madame foreperson, ladies and
 7    gentlemen of the jury, I commend you to your verdict
 8    shall.  The jury may begin deliberating.
 9          (Jury excused.  Time noted:  1:21 p.m.)
10              THE COURT:  Be seated.  Counsel, please
11    provide cell phone numbers to the case manager so that
12    we can reach you on 5 or 10 minutes notice in the event
13    a jury comes back with a question or when they are
14    ready to return a verdict, and the defendants are
15    entitled to be present for any note or questions so
16    counsel, you should be in touch with them as well so
17    that they can be here as well.
18         If you want some lunch, probably a good idea to go
19    get it right now because the jury is going to be eating
20    their lunch and probably won't be starting to talk
21    about the case for at least a little while while they
22    have their lunch, but I would like you to be available
23    through cell phones if we need to meet with you.
24         And I think that we have covered all of the issues
25    and that the Court will stand in recess pending the
```

1    jury verdict, but I would like to see the lawyers at

2    sidebar.

3                (Discussion off the record).

4                (Time noted:  1:24 p.m.)

5                (Recess called)

6                (Time noted:  3:11 p.m.)

7                THE COURT:  We have our first note from the

8    jury.  It reads, may we have the diagnostic criteria

9    for delusional disorder, question mark, from the DSM-V.

10   Do we have this information in the evidence?  And

11   signed by the foreperson.  We will mark this as Court

12   Exhibit 1.

13       You can come up and look at it.  Why don't you

14   talk about it first and then we will go on the record.

15               (Discussion off the record between counsel)

16               Back on the record?

17               MR. MINNS:  Yes.

18               THE COURT:  Go ahead, Mr. Minns.

19               MR. MINNS:  I think we have to rely on the

20   evidence and just instruct them to -- I don't think we

21   can tell them what's in the evidence because that's

22   reopening the record and I don't think we can give them

23   criteria that they don't already have because that's

24   reopening the record.

25       So I believe, unless I'm mistaken, Your Honor, we

1    can tell them you must rely on the evidence as they

2    heard it and they must -- am I wrong on that?

3              THE COURT:  No.  I'm waiting to hear -- make

4    your point.

5              MR. MINNS:  That's what I believe.  I don't

6    know that I have --

7              THE COURT:  Let me interrupt with a question.

8    I think I saw a photocopy of the cover page.  What went

9    in, did the document all go in?

10             MS. KELLY:  It was a cover page of the

11   textbook.

12             THE COURT:  Of the textbook.  So nothing of

13   the DSM-V went in in terms of an exhibit?

14             MS. KELLY:  Correct.

15             MR. MINNS:  No.

16             THE COURT:  So the only question is what was

17   the testimony and the testimony would be from Dr. Voss

18   and Dr. Wisch.

19             MR. MINNS:  Yes.

20             THE COURT:  What's your position, Mr. Vincent?

21             MR. VINCENT:  Well, just that there might be

22   some discussion about what criteria there is.  I don't

23   have a recollection that they read verbatim the

24   criteria, but there might be references to the criteria

25   in either of their testimonies and we should identify

1    that.

2         THE COURT:  And your position, Ms. Kelly, Mr.

3    Chapman?

4         MS. KELLY:  Your Honor, I would submit that

5    the delusion disorder was discussed and the criteria

6    was discussed in the testimony with Dr. Wisch and it

7    was cross-examined, one aspect of delusion disorder

8    which was the subculture, with Dr. Voss.  So I think we

9    should direct them back to the testimony and

10   cross-examination of both doctors and that their

11   recollections control.

12        I don't think at this point we can submit

13   additional evidence.  I don't think we can give them

14   the DSM and give them the chapter on delusion disorder

15   because it's three separate pages and it's got a whole

16   lot of different stuff that's completely not relevant

17   or part of this case.

18        THE COURT:  Let me interject.  You're

19   certainly correct those of you who said this, the

20   record is closed and there is no way you can now reopen

21   the record and the evidence.  The only thing we can do

22   is refer them either to exhibits or you can ask them to

23   use their best recollection or you can agree on a read

24   back of portions.  That's the only three options that

25   there are.

1          MS. KELLY:  I would submit that we ask them to

2     rely on their recollections and direct them to both

3     doctors as to which it came in.

4          MR. MINNS:  I agree with the first part, but I

5     don't agree with the second part because then that's

6     closing argument.  We're telling them what they should

7     be looking at and I think that's up to the jurors to

8     review the evidence.

9          MR. VINCENT:  Well, they certainly have a

10    right to know that they have -- I believe the Court's

11    already instructed them that they can have a readback

12    if their memory required it so --

13         THE COURT:  Okay.  Let me draft something and

14    I'll let you look at it.

15         All right, counsel, here is the beginning of a

16    proposed note back.  It reads, madame foreperson, DSM-V

17    was not admitted into evidence and therefore is not

18    available to you.  There was testimony about it which

19    you can consider.

20         Come take a look at that and tell me if you want

21    to change it or make additions or subtractions.

22         MR. MINNS:  Could we say should consider

23    because they should consider all the evidence.  If we

24    say can consider, that implies the evidence might not

25    be important.

```
 1              THE COURT:  Maybe I should just -- I don't
 2    want to say should because that's also commenting.  I
 3    can take out that phrase and just say there was
 4    testimony about it.  That's agreeable?
 5              MR. MINNS:  Yes.
 6              THE COURT:  That's agreeable?
 7              MR. CHAPMAN:  Fine.
 8              MR. VINCENT:  Yes.
 9              THE COURT:  That was my legibility test.  This
10    is Court Exhibit 2.  Come take a look at it, please.
11              MR. MINNS:  Yes, Your Honor.
12              MR. CHAPMAN:  No objection.
13              THE COURT:  No objection?
14              MR. VINCENT:  That's fine, Judge, thank you.
15              THE COURT:  All right.  Then we will have the
16    jury officer take that back.  Counsel, let me suggest
17    you stay here for ten minutes and see if there is an
18    immediate request for a readback and I'll excuse
19    myself, but I'll be available.  Thank you.
20              (Time noted:  3:21 p.m.)
21              (Recess called).
22              (Time noted:  4:35 p.m.)
23              THE COURT:  We have our second note, Court
24    Exhibit 3, and it reads, does the last paragraph of
25    12-top of 13 (but because he disagreed with tax laws or
```

```
 1    authority of the IRS, tax laws not valid or

 2    unconstitutional), override previous things in that

 3    paragraph- e-x -- I take it they mean for example --

 4    bottom of 11-top of 12 re:  He believed, as a

 5    misunderstanding of the statutes that he was not

 6    required to file a return?

 7        If we believe he believes he wasn't required to

 8    file, does it matter if he also believes in

 9    constitutional issues, et cetera?  Signed by the jury

10    foreperson.

11        You can come and look at it.  I think the page

12    reference is in my jury instructions.

13            (Discussion off the record between counsel)

14        This is the Cheek decision, but it has some of my

15    markings on it.

16            MR. MINNS:  I'm very familiar with the

17    question.  The reason we posed the problem to begin

18    with was because we didn't feel that he did this, but

19    Cheek -- thank you, Your Honor, I apologize.

20        First, no instruction overrides another

21    instruction so the answer to that -- and let me make

22    sure I'm reading this correctly -- override, the answer

23    is no.  No instruction overrides another instruction.

24        The second part we all know the answer, but I

25    don't know what the Court wants to do.  If they believe
```

1    he wasn't required -- if he believes he wasn't required

2    to file, he's not guilty, but if his only reason is

3    because of the Constitution, that would be different

4    and I think they could come to that same thing that

5    Cheek came to.  There are two possibilities.

6         If you believe because of your reading of the law,

7    then you are not guilty, but you are not allowed to

8    rely on your interpretation of the Constitution and

9    that's -- that's the conflict we have with Cheek.  If

10   he believes he's not required to file based on a

11   reading of the law itself, he's not guilty.  He is not

12   allowed to assert as a defense that it's not

13   constitutional.  We did not assert that in the course

14   of the defense.  The Government asserted it in their

15   argument.

16        If we believe he believes he wasn't required to

17   file, does it matter if he also believes in

18   constitutional issues, et cetera?  The answer is no.

19             THE COURT:  Do you agree?

20             MR. VINCENT:  Well, it's the word "also",

21   Judge.

22             THE COURT:  I'm not even sure it bears on your

23   client.  He's referring to the part of the charge

24   concerning failure to file.

25             MR. VINCENT:  Well, I understand it's the

1    failure to file.

2              MR. MINNS:  Well, wait a second.  Counsel and

3    I --

4              MS. KELLY:  I think that the Court needs to

5    instruct them that they have to read the instructions

6    as a whole and give the words their regular context and

7    meaning and that no part of the language in that

8    instruction overrules another part, but they have to

9    read it all together in full context.

10        And I don't think you can opine on that bottom

11   paragraph, if he believed he believed he wasn't

12   required to file, it doesn't matter if he also believes

13   in constitutional issues because what I believe that

14   question is saying is was he -- if he's relying on

15   constitutional issues for not filing, where does that

16   leave us?  So they're basically asking for additional

17   legal advice.

18        The law, as Mr. Minns stated, is that believing --

19   you know, asserting that there's constitutional flaws

20   in the tax code is not a defense and it doesn't

21   constitute a good faith belief.  So --

22              THE COURT:  Well, let me suggest to you

23   another reading of the note, which to me seems more

24   plausible, is that the jury, if they reach the belief

25   he's not required to file, are suggesting they might

1    reach that because they believe he both thought that he

2    was not required under the code and that it was

3    unconstitutional and that one without the other might

4    not have done it.

5        They're saying, I think, perhaps that they think

6    all the factors may have had an impact and if that's

7    the case, what should I answer?  Is this a but for

8    determination, that without his views about

9    constitutionality or IRS authority he would not have

10   concluded that he did not have a duty to file, or is it

11   something less than that?

12       It's Cheek, it's the problem the Supreme Court

13   left us with in Cheek by posing those two things

14   simultaneously.

15           MR. MINNS:  And Judge Scalia spoke to that

16   very well in his joining opinion, which should have

17   been the majority -- he was part of the majority, but

18   should have been the final opinion.  He said it made no

19   sense if -- not to have -- if you thought it was

20   unconstitutional not to say that's okay too, but

21   that -- he was not -- that was his joining in the

22   decision.  It wasn't the silent decision so it's not

23   the law.

24           THE COURT:  Right.

25           MR. MINNS:  But he figured that out too.

1           THE COURT:  The answer to the first question,

2     I agree with all of you, is nothing overrides anything

3     else within the instructions, but I think the question

4     is how do we assist the jury on the second question.

5     We simply say we can't answer it or do we give them

6     some other answer?

7           MR. MINNS:  No because what will happen is --

8     this is what Cheek said, which created the quandary,

9     which created the court's decision in these type of

10    instructions, Cheek was reversed because they said it

11    was not allowed -- the subjective opinion on whether

12    the tax code was -- whether he was required to file in

13    the tax code and he has 50 million reasons and one of

14    those reasons was constitutional.

15         But they set on the side -- on the side of that

16    thing and it wasn't the opinion itself, it's what Judge

17    Scalia was trying to fix and the other judges would

18    not -- the majority wouldn't allow it.

19         If they understand the law enough to decide that

20    they are breaking it and then say but I'm allowed to

21    break it because it's unconstitutional, then they can't

22    have the mens rea to follow the law and what happened

23    -- but they reversed on Cheek and Cheek was ordered to

24    have a new trial.

25         So what happens is the constitutional issues are

1    two separate reasons, and I agree with the Court, it is

2    a logical English construct and a logical thinking that

3    they could be conjoined and they may, in fact, be

4    conjoined, but the Cheek decision does not consider the

5    conjoining of it.  The Cheek is an either/or.

6         He can argue to the jury that he does not believe

7    he's required to file.  He cannot argue to the jury

8    that the Constitution does not require him to file and

9    all we argue was that he was not -- the reason the

10   Constitution issue is in here --

11        THE COURT:  It's not just he can argue it,

12   it's what he can use as a basis for the belief.

13        MR. MINNS:  Yes.

14        THE COURT:  What you argue does not limit the

15   Government from showing the belief is based on

16   something else.

17        I understand your position; what's your position?

18        MS. KELLY:  Your Honor, I think that they're

19   struggling with that instruction, and I'm not sure that

20   there's additional legal instruction that we can give

21   them.

22        THE COURT:  Let's do this.  Let me allow you

23   to have 5 or 10 minutes to think about it, which I'm

24   going to do with my law clerks.  Can we get a copy of

25   this?  Make several copies, would you?

1              One thing about Maine juries, they cut right to

2     the heart of it.

3              (Time noted:  4:50 p.m.)

4              (Recess called).

5              (Time noted:  5:21 p.m.)

6              THE COURT:  Be seated.  All right, counsel,

7     back together again and you were given copies of the

8     Cheek decision to look at.

9         Any further insights from any of you?  I'll hear

10    first from the defendants or whichever way you want to

11    go.

12             MS. KELLY:  Well, Your Honor, it looks like

13    they believe he believes he doesn't have to file

14    because it's unconstitutional based on our reading of

15    their question.

16        We're not sure how the Court can supplement that

17    other than almost using the first supplemental

18    instruction, the one that wasn't disapproved in Cheek,

19    which is a person's opinion that the tax laws violate

20    their constitutional rights does not constitute good

21    faith belief --

22             THE COURT:  Slow down.  Say that again?

23             MS. KELLY:  A person believing that the tax

24    law violates a constitutional right does not constitute

25    a good faith misunderstanding of the law.  Furthermore,

1    a person's disagreement with the Government's tax

2    collection systems and policies does not constitute a

3    good faith misunderstanding of the law.

4              THE COURT:  And that's from where in <u>Cheek</u>?

5              MS. KELLY:  Page 3.  That's not the

6    disapproved language where ultimately it gets reversed.

7    It's the supplemental instruction where the <u>Cheek</u> jury

8    sent out an almost -- a very similar question and the

9    court basically broke that out for them in that piece

10   of advice.  But we --

11             THE COURT:  So it's a person -- a person's

12   opinion that the tax law violates his constitutional

13   rights does not constitute -- is that what you're

14   reading?

15             MS. KELLY:  Yes, Your Honor.

16             THE COURT:  I see it.  So what are you

17   proposing?

18             MS. KELLY:  That if the Court was considering

19   -- we don't think that there should be an additional

20   instruction.

21             THE COURT:  Okay.  All right, so your first

22   answer is answer the first question saying they are all

23   equally important and then saying what else; nothing

24   else?

25             MS. KELLY:  Saying that -- yeah, saying that

1    you need to read the instructions carefully and we

2    can't advise you further.

3              THE COURT:  I understand.  Mr. Minns.

4              MR. MINNS:  Yes, Your Honor.  I didn't -- I

5    didn't read this carefully enough and Joel showed it to

6    me and he was arguing before the Court left and he's

7    totally correct and the jury has totally understood the

8    instructions.

9         If we read it exactly as they have written it, if

10   we believe he believes he wasn't required to file, does

11   it matter if he also believes in constitutional issues,

12   et cetera.  Also, not contributing to it, but also.

13        It is absolutely clear and any answer other than

14   no violates Cheek and is error and the jury understood

15   this.  They've nailed it.  They have divided the

16   bifurcation and they have also asked for confusion

17   because it does have some confusion.

18        The confusion is when they're instructed if he

19   honestly believes he's following the law, is he

20   innocent?  Answer:  Yes.  But then the instructions

21   follow, if he says that his defense is

22   constitutionality, that is not a defense and Cheek does

23   that.  It bifurcates it.

24        At first he was not entitled to acquittal on a

25   good faith belief that income tax was unconstitutional,

1    but his good faith belief that the tax laws did not

2    impose any duty on him did not have to be objectively

3    reasonable.

4         Now, what has happened is this, and obviously I

5    agree with the Court, the Government is not required to

6    just rely on what he testifies to.  They have a whole

7    bunch of papers and they have interpreted those papers

8    as objecting to constitutionality of the tax code.

9    That is their argument, but -- and they have achieved

10   an instruction because of their argument.

11        We disagree with the --

12             THE COURT:  Stay with this.

13             MR. MINNS:  I'm sorry.

14             THE COURT:  I mean the argument is over --

15   what is it you want me to say to them?

16             MR. MINNS:  No.  Also, if the question -- if

17   we believe he believes he wasn't required to file, does

18   it matter if he also believes in constitutional issues,

19   et cetera, meaning does anything else he believes

20   matter.

21             THE COURT:  I understand.  What you have

22   collectively persuaded me is that we don't really know

23   what the jury note means.  You've given me a plausible

24   interpretation.  Another plausible interpretation is

25   that they've concluded, perhaps, that he believes he

```
 1    wasn't required to file as a result of a whole conjures
 2    of matters, the constitutional issues, his
 3    interpretation, et cetera, and I think the best thing
 4    that I should do is basically what the Government
 5    suggests and not pretend to interpret what they're
 6    saying because I may have it wrong in terms of the
 7    answer.  Let me draft something here.
 8              MR. VINCENT:  Judge, could I just say
 9    something for the record?
10              THE COURT:  Of course.
11              MR. VINCENT:  My concern all along is that the
12    Government, in their cross-examination of Mr. Messier
13    and perhaps of my client as well, kept saying you made
14    this constitutional argument, isn't that right?  And
15    they agreed, but they never identified on the record so
16    that we'll ever be able to determine what that
17    constitutional objection -- what particular issue that
18    went to.
19         So if this case is going up on appeal at some
20    point, it's going to be impossible for the appeals
21    court to know what that particular constitutional
22    objection referred to because the Government never
23    identified a page or a paragraph or anything.  They
24    just -- they wanted the defendants to say they had
25    constitutional --
```

1           THE COURT:  I'm not sure what you're asking me

2      to do with that now.

3           MR. VINCENT:  Well, what I'm suggesting is

4      that it should be no to this because there's no other

5      way to resolve the issue without knowing what the

6      constitutional arguments went to.

7           THE COURT:  I understand, but I think the note

8      is ambiguous.  I'm going to write something.

9           All right, counsel, this would be Exhibit 4.  I

10     haven't signed it yet.  It reads, madame foreperson,

11     the answer to your first question is that all portions

12     of my instructions are equally important and one

13     instruction does not override another instruction.

14          You will have to answer the second question

15     yourselves based upon the evidence and upon my

16     instructions on the law.

17          You can come up and take a look at it for

18     additions or subtractions, and obviously I'll hear your

19     objections.

20          All right, so your objections, any from the

21     Government?

22          MS. KELLY:  No objection, Your Honor.

23          THE COURT:  Mr. Minns?

24          MR. MINNS:  We do not object to the first

25     answer.  We object to the second answer because the

1    jury has been very clear, and reading in context makes

2    it clear, they are saying if we believe he believed he

3    wasn't required to file, does it matter if he also

4    believes in the constitutional issues, et cetera, which

5    really means whatever else he believes, does that

6    matter.

7         The reason they're asking that is because the

8    constitutional instructions, which are in there

9    earlier, which we did object to, we did not -- we felt

10   the Government was interjecting that into the argument

11   without citing anything about -- I mean they were just

12   taking --

13            THE COURT:  You're backing up to closing

14   argument.  Let's stick to this.

15            MR. MINNS:  I'm sorry, Your Honor.  The answer

16   is no.

17            THE COURT:  I understand that's your position.

18   Mr. Vincent, any other --

19            MR. VINCENT:  I join in that without further

20   comment, Judge.  Thank you.

21            THE COURT:  And I'm overruling that objection

22   because I find the note to be ambiguous.  That's a

23   plausible interpretation that Mr. Minns and Mr. Vincent

24   have given, but it's also plausible that the jury

25   thinks a number of factors have gone into the beliefs,

1    to the extent the defendant had them, and that they're

2    seeking guidance in how to balance or evaluate those,

3    and so I think it's best to leave it to the jury to

4    decide on it.

5         So here is Court Exhibit 4 and again, it might be

6    valuable to stay around for ten minutes and we will see

7    what comes next.  Thank you very much.

8              MR. CHAPMAN:  Thank you.

9              (Time noted:  5:33 p.m.)

10             (Recess called).

11             (End of excerpt).

12             **C E R T I F I C A T I O N**

13   I, Dennis Ford, Official Court Reporter for the United

14   States District Court, District of Maine, certify that

15   the foregoing is a correct transcript from the record

16   of proceedings in the above-entitled matter.

17   Dated:  April 30, 2015

18             /s/ Dennis Ford

19             Official Court Reporter

20

21

22

23

24

25